WINFIELD S. CAHILL *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Order for an Appeal Handed to Clerk of Court But Lost and Not Entered—Liability of a Municipal Corporation for Diverting Surface-Water and Discharging the Same Upon Plaintiff's Property—Expert Evidence.*

Although, according to the record and docket entries in this case, the appeal was not taken until long after the time limited by law for taking appeals, yet, since the depositions of different persons submitted to this Court established the fact that the appellant's counsel did file, in due season, in the Clerk's office of the trial Court a written order for an appeal, and that the same was lost or mislaid without having been entered on the docket, the appeal will not be dismissed.

When a municipality changes the surface-drainage adjacent to plaintiff's land and causes the same to empty into a stream alongside of plaintiff's marine railway, depositing there tons of mud and refuse matter, filling

up the stream at that point and going over and upon plaintiff's ways so as to destroy their use, the municipality is liable in damages for such an invasion of plaintiff's property, although there may have been no negligence in the construction or location of the drain.

In an action to recover damages for the above-mentioned injury, the evidence of an expert that the drain was improperly constructed is not admissible. The question in the case was whether the plaintiff was injured by the mode in which the drain was made, not whether it was badly built, or could have been constructed in some other way.

Appeal from the Baltimore City Court (PHELPS, J.)

The cause was argued before McSHERRY, C. J., FOWLER BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Thomas R. Clendinen*, for the appellant.

*Charles W. Field* (with whom was *Wm. Pinkney Whyte* on the brief), for the appellee.

BOYD, J., delivered the opinion of the Court.

A motion to dismiss this appeal has been made by the appellee on the ground that it was not taken within two months from the date of the judgment, which was rendered on the 6th of December, 1899. The record does show that the appeal was taken on June 27th, 1900, but the affidavits filed satisfy us that an order to enter an appeal was signed by the attorney for the appellant and left by him in the clerk's office on the 3rd day of January, 1900. Mr. Clendinen, the attorney, swears positively and unequivocally, than he did leave such an order on that date with one of the clerks in the office who told him that when the "Court clerk," who was then out, returned, he would file the order. The Hon. Thomas G. Hayes, who had been associated with Mr. Clendinen in the case and withdrew from it when he was about to qualify as Mayor of Baltimore, swore that he saw the order, signed by Mr. Clendinen, who afterwards told him that he filed it. Another party made oath that he met Mr. Clendinen coming out of the building then used for a court-house, in the early part of January, 1900, who told him that he had just left in the clerk's

office the order for the appeal and other parties, whose affidavits were filed, tend to support his statement.   It is true most of the affiants had no personal knowledge of the matter, but they were told by Mr. Clendinen of the fact that the appeal had been taken at times when there could have been no possible object in making an incorrect statement about it. The affidavits show that the clerk's office was moved from the temporary quarters to the new court-house shortly after the 3rd of January, 1900, and it is probable that the order was in that way mislaid and omitted to be filed.   The fact that the record shows the appeal was entered on June 27th, 1900, is explained by the "Court clerk" as well as by Mr. Clendinen. The bills of exception were not filed until then and the clerk noticed that there was no entry of an appeal and told Mr. Clendinen he could not send the record to this Court without such an order.   Mr. Clendinen replied at once that he had left the order in the office, but as the clerk could not find it, another order was then drawn by the clerk which was signed by Mr. Clendinen and filed.

The case differs from such as *Humphreys* v. *Slemons,* 78 Md. 606, and *Gaines* v. *Lamkin,* 82 Md. 129, where *verbal orders* were given, but the appeals were not *entered* within the time required.  If it be true that the appellant did leave an *order in writing* within the time fixed by law, it would be a great injustice to him to deprive him of the benefit of it simply because the clerk omitted to file it and it was mislaid, without the fault of the appellant.   The proof before us on that subject being sufficient to satisfy us that such was the case, we do not feel justified in dismissing the appeal under the circumstances of this case.   The appellant did all he could do and having given the order in writing had the right to assume it would be filed.   We would hesitate to permit the affidavit of one person to overcome the presumption of the correctness of the docket entries which show that the appeal was taken on June 27th, 1900, as he might be mistaken, but as Mr. Clendinen's positive recollection is corroborated by others (especially as to the fact that he did actually sign the written order for an appeal), and the date of

that entry is explained, we think it fair to conclude that the order was left, as he says it was, and was probably mislaid by reason of the confusion that would likely be caused by the removal of the office from one building to another about that time.

The delay in having the bills of exception signed seems to have been caused by the change in the legal department of the city government. The time was extended by the Court by several orders and attached to one of them is an agreement stating : " It is agreed in this case that in order *to afford time for the defendant* to examine and pass upon the bill of exceptions tendered by the plaintiff the time for signing the same be extended," &c. They were not signed until June 27th, and although there was then considerable delay in transmitting the record to this Court the affidavits of Mr. Lowery, the Court clerk, and of Mr. Clendinen show that the day after the former notified the latter that the record was completed and of the amount of the cost, the latter paid it. The record was then at once sent to this Court and the appellant was not in fault for not having it here at an earlier date. The motion to dismiss will be overruled.

The appellant is the surviving partner of a firm, trading as the Peoples Marine Railway, which was the lessee and in possession of a lot of ground in the city of Baltimore, on Jackson street, which extended to the water front on what is known as the back basin and of certain marine railways and appurtenances. The firm built and repaired boats and scows and also maintained a ship and spar yard upon the premises. The marine railway extended into the water of the back basin adjacent to the lot which was of considerable and suitable depth. The appellant's firm took possession of the premises in 1889 and held them until 1898, when, as he claims, they had to be abandoned by reason of the act of the appellee which is complained of in this case. There were two " ways " which had been in use thirty or forty years prior to the time the appellant's firm got possession, when they expended about six thousand dollars in repairs and getting them in condition for use.

The evidence tended to show that prior to the obtention of the property by the appellant's firm the rain water, as well as surface-drainage of various kinds, went down Jackson street to a point about thirty feet to the north of appellant's premises where it entered a ditch on Fifth lane, then ran in the ditch in Fifth lane about thirty feet where the ditch turned to the southeast running through appellant's property, then on to other property until it finally emptied the water and drainage into the Patapsco river some distance from the "ways" and where it did not injure the marine railways or the property of the appellant. The ground descends from the south towards Fifth lane and that west of Jackson street is high and in ordinary as well as extraordinary rains the drainage from those directions was conducted to the ditch and thence to the basin. Large quantities of clay, mud, gravel and loose refuse and material were carried by the water through the ditch to the basin. In the latter part of 1891, or early in 1892, the defendant placed a wooden box in the ditch and carried it to the end of Fifth lane where it emptied into the water close to the appellant's railways carrying sand, mud, gravel, refuse matter and other things. These deposits, which amounted to tons in quantity, filled up the ground underneath, and went over and upon the ways, rendering the use of them impossible and according to the appellant's claim they had to be abandoned. This suit was instituted to recover damages for injuries sustained by the appellant's firm by reason of this alleged diversion of the surface drainage from its usual course to the place spoken of, which resulted in destroying their business. At the trial of the case two exceptions were taken—one to the action of the Court in ruling out certain evidence which had been admitted subject to exception and the other to the granting of a prayer offered by the defendant which instructed the jury to render a verdict for the defendant.

The prayer is as follows: "The defendant prays the Court to instruct the jury that there is no evidence in the cause legally sufficient to show any negligence on the part of the defendant either in the construction or in the location of the

drain in question and the verdict of the jury must be for the
defendant." It proceeded on the theory that it was necessary
to show *negligence* on the part of the defendant either in the
construction or location of the drain in order to entitle the
plaintiff to recover. When that prayer was granted the case
of *Guest* v. *Church Hill*, 90 Md. 689, had not been decided by
this Court. Whatever doubt may have existed prior to that
decision as to the right of an owner of property to recover
against a municipal corporation, if it collect the surface-water
from the streets into an artificial channel and discharge it upon
his land, have been removed by that decision, although there
be no negligence on the part of the municipality in doing the
work. If, as is claimed by the appellant, the appellee has
diverted the surface-water from its usual and accustomed flow
and discharged it upon the property of his firm, by means of
a ditch constructed by it, and thereby damaged it, it is diffi-
cult to understand upon what principle it should be relieved of
liability. Every owner of land within the bounds of a muni-
cipality may be required to suffer some injury in consequence
of authorized improvements for the benefit of the public, for
which he has no redress, but to permit the municipal author-
ities to invade the property of such owner by making it the
dumping-ground for such articles as may be collected in the
artificial drains constructed by them is as much an infringe-
ment on his rights as if they had taken possession of it for
other purposes. If it be true that the appellee did, by the
construction of this drain cause mud, sand, dirt, filth and such
other articles as are mentioned in the evidence to be discharged
in and about the "ways" of the appellant so as to prevent the
proper use of them, it cannot be permitted to escape all re-
sponsibility simply because it has legislative authority to build
drains. In the case last cited the second and third counts in
the declaration did not allege that the work upon the streets
there spoken of had been negligently or unskillfully done, but
this Court held that they were sufficient and reversed the
judgment of the lower Court which had sustained a demurrer to
them. It was held that when a municipal corporation by a

change in the grade of streets and the construction of drains, diverts the surface-water from its natural flow, concentrates it in volume and throws it upon the land of an abutting owner, such action is *an invasion of the adjoining property* and the municipality is liable for the injury thereby caused and it makes no difference whether the drains were constructed negligently or not. If such be its liability in changing the grade of streets, a municipality surely cannot, with impunity, collect the surface-water in a drain and thereby carry to the property of another such articles as those mentioned in this record and thus destroy the use of the property. If it can empty a drain on the marine railways of the appellant, why could it not empty one on any other property in the city? The case referred to so clearly and forcibly disposes of the question that it would be useless to prolong this opinion by further discussion of it, especially as the former decisions of this Court bearing on the subject are there referred to. There was error in granting the prayer.

Having determined that it is not necessary, to entitle the plaintiff to recover, for him to prove that the drain was negligently contructed or located, it does not very clearly appear how the evidence of the witness Mitchell can be relevant. We do not think he was incompetent to testify as an expert merely because he was not an engineer and did not have a collegiate education as an engineer. He had been engaged in contracting for and building sewers and drains for twenty years and if the evidence of an expert was relevant we think his knowledge and experience in work of that character were sufficiently established to have qualified him to speak as an expert. But it was not relevant to prove by an expert that this drain had been improperly constructed. The facts as to how it was built, where it emptied, what it carried and such matters were relevant as reflecting upon the question as to whether the defendant had violated the rights of the plaintiff. But if it be true that the defendant constructed this drain which carried the dirt, &c., to the property of the plaintiff in such quantities as to fill up the dock, it was not necessary for an expert to

say that was "not a reasonable or proper mode of carrying the water down to that point." The jurors were as well qualified to judge of that as an experienced builder of drains, as it required no special skill or knowledge to do so. Nor was it material, as far as we see from the record, to prove how the drain might have been constructed so as to avoid injury to the plaintiff. The question was whether it injured the plaintiff in the way in which it was built and if so to what extent—not whether it could have been built in some other way. Such inquiries might be relevant under some circumstances but we do not understand how they were in this case, as presented by the record.

For the error in granting the defendant's prayer we must reverse the judgment.

> *Judgment reversed and new trial awarded, the appellee to pay the costs.*

(Decided March 14th, 1901.)