## THE NEW YORK, PHILADELPHIA AND NORFOLK RAILROAD COMPANY *vs.* BENJAMIN S. JONES.

*Water-Courses—Liability of a Railroad Company for Overflow of Land Caused by Embankment and Ditches—Pleading—Evidence—Damages.*

A declaration alleged in the first count that the defendant entered plaintiff's land and flooded the same with water, and in the second count that defendant constructed a railroad embankment and ditches, thereby collecting a large body of water and discharging the same on plaintiff's land, so as to render the land unfit for cultivation. *Held*, on demurrer,

1st. That these two counts were properly joined in the same declaration.

2nd. That it was not necessary to charge that the acts complained of in the second count were wrongfully done.

In an action against a railway company for causing the overflow of plaintiff's land by an embankment, etc., a plea alleging that the acts complained of were merely a user of defendant's right of way to which it was entitled is bad because amounting to the general issue.

A railway company is liable for injury to land in the neighborhood caused by the construction of an embankment and ditches which increase the flow of water upon such land, although the embankment and its lateral ditches were necessary for the road and were skillfully made.

In an action to recover damages for the flooding of plaintiff's land caused by a railway embankment and ditches, a warrant of re-survey was issued although defense was not taken on warrant and no question of

title was involved; and the plat returned was used for illustration only. The surveyor who executed the warrant, while explaining the plat, testified as to the altitude of certain points above the tide-level by reference to letters and figures said to have been marked at certain places by the U. S. Geological Survey.  *Held,*

1st. That this evidence was inadmissible, since the surveyor did not see the marks placed and knew of their meaning only from hearsay.

2nd. That evidence by the surveyor as to the position of ditches not located on the plat was admissible, since the defendant was entitled to show that other ditches than those constructed by it contributed to the flow of water alleged to injure the plaintiff, and the plat was not a pleading in the case.

3rd. That the plaintiff's opinion as to how relief from the overflow could be obtained in future is not competent, because not relevant to the matter of damages sustained.

4th. That evidence as to the cost of cleaning out the ditch running through plaintiff's land and deepening it is not admissible, since the defendant is not liable for the cost of a system of drainage designed to prevent future damage and to relieve the flow of water coming from sources not created by it.

5th. That testimony as to the amount plaintiff lost by crops destroyed and crops he was unable to raise in consequence of the overflow is inadmissible because too speculative.

Defendant in constructing its railroad through certain low ground built an embankment which intersected an old ditch draining the adjoining land and which ran thence and passed through plaintiff's land. Defendant placed a culvert under the embankment, constructed lateral ditches and enlarged the old ditch the result of which was to increase the volume of water flowing thence and the rapidity of its flow so that plaintiff's land was often flooded.  In an action to recover damages, *Held,*

1st. That the plaintiff is entitled to recover although before the cutting of the ditches by the defendant his land had been subject to overflow when there were heavy rains, provided the jury find that the overflow was increased in volume and rapidity by the acts of the defendant, and it makes no difference that the ditches were necessary to protect defendant's road-bed and were properly placed and constructed.

2nd. That the fact that the plaintiff requested the defendant to clean out the ditch passing through his land is not a bar to the action.

3rd. That the grant by the owner of land above the plaintiff to the defendant of the right to enlarge that part of the main ditch passing through his land does not give the defendant a right to send a larger quantity of water through it upon plaintiff's land.

4th. That in estimating damages the jury are not authorized to consider

the expenses incurred by the plaintiff in an attempt to relieve his land from the flow of water.

The matter of allowing a witness to be examined again in chief after the cross-examination has begun is subject to the discretion of the trial Court, and no appeal lies from its action in the premises.

Appeal from the Circuit Court for Wicomico County (HOLLAND and LLOYD, JJ.)

*Plaintiff's 1st Prayer.*—That if the jury shall find from the evidence that the defendant is an incorporated Railroad Company owning a railroad running through Worcester County from Pocomoke City in said county, southwardly through certain swamps and erected embankments and laid down its tracks thereon, and cut the ditches on either side of said tracks and cut out and enlarged a small ditch upon the land lying west of and adjoining said railroad tracks, and thereby greatly increased the volume and rapidity of flow of the water in said ditch leading to the plaintiff's said land, and by the said ditches collected and brought down a large body of water which had hitherto not been accustomed to run in a defined channel and emptied it into a certain ditch mentioned in the evidence as the main leading ditch, passing through the lands west of said railroad track and thence through the lands of the plaintiff, greatly in excess of its capacity to carry it off, and in excess of any former user or servitude of said named ditch and much greater in volume and rapidity of flow upon and over said lands of the plaintiff, and by reason of said excess of water in volume and rapidity caused overflows of water brought down by said ditches so cut by the defendant upon the said lands of the plaintiff, and that the said lands of the plaintiff were injured by said overflows, then their verdict must be for the plaintiff, notwithstanding they may find that the said lands had been subject to overflow before said ditches were cut by the defendant when there were heavy rains, if they shall further find that the said overflow was increased in volume and rapidity by the cutting of the said ditches by the defendant. (*Granted.*)

*Plaintiff's 2nd Prayer.*—That notwithstanding they may find

it was necessary for the proper and safe construction and running of defendants' railroad to cut ditches along their track, in order to drain it, and they had the right to do so, yet it was their duty to exercise said right and to drain said water from said ditches on the track in such reasonable and careful manner so as not to injure the proprietors of land being below the said railroad tracks, and if the jury find that the defendant in cutting and draining off its said ditches has not used reasonable, adequate and sufficient care and effect to prevent injury and damage to the land owners below said tracks, and any injury has been sustained thereby by the plaintiff, by overflows on his land below said track, then the defendant is liable to the plaintiff in this action for such damage as they may find has resulted to him by reason of said want of care and effort. (*Granted.*)

*Defendant's 4th Prayer.*—If the jury believe that the defendant did erect embankments as a road-bed for its tracks and did lay its railroad track thereon and did dig and grade ditches either at the time of the constructing of its road or since, along or parallel with its track and on its right of way, and that the ditches connected with and emptied their water into the "Main Lead Ditch" located on the plat, and that the said main lead ditch is an ancient water-way existing from time beyond the memory of man and is a drain through which the water naturally flows to and upon the plaintiff's land, and shall believe that the aforesaid ditches cut and graded by the defendant on its right of way was according to the natural flow or lay of the land, that is to say, would naturally flow toward the said main lead ditch, and that the said cutting and grading was necessary for the proper drainage of the road-bed of the said defendant and to make the same safe for public travel and traffic thereon, then the plaintiff is not entitled to recover under the pleadings in this cause and their verdict must be for the defendant, even if they believe that the said ditches so cut and graded by the defendant did increase the flow of the water into and through the main lead ditch aforesaid, flowing and running through the land of the plaintiff. (*Rejected.*)

*Defendant's 5th Prayer.*—If the jury shall believe that the defendant did cut and grade ditches along the right of way of the defendant since the construction of its railroad, and that the said ditches were proper and necessary for its drainage and for the safety of public travel and traffic, and were properly and skillfully made, and cut in accordance with the fall of the land or natural flow of the water, and that the same connected with the "main lead ditches," and that the same is the natural and ancient outlet for the said water, then the plaintiff is not entitled to a verdict in this case even though the jury may believe that the cutting and grading of the said ditches on the right of way of the defendant did increase the flow of water in and through the main lead ditch running through the plaintiff's land. (*Rejected.*)

*Defendant's 6th Prayer.*—That the plaintiff is not entitled to recover under the pleading in this cause for any omission on the part of the defendant to cut and clean or enlarge the main lead ditch running through the land of the plaintiff. (*Rejected.*)

*Defendant's 7th Prayer.*—If the jury shall believe the matters and things set out in the defendants' first prayer, and shall find that the plaintiff's land was injured by an increased flow of water therein, yet before the jury can find a verdict against the defendant for such injuries or for any injuries caused thereby, they must find that the said increased flow of water was caused or contributed to by the acts or negligence of the defendant. (*Rejected.*)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE, and SCHMUCKER, JJ.

*James E. Ellegood* and *Joshua W. Miles*, for the appellant.

*Jno. H. Handy*, for the appellee.

PEARCE, J., delivered the opinion of the Court.

This suit was brought by the appellee, who is the owner of a farm in Worcester County, Maryland, to recover damages

for injuries alleged to be caused to the appellee's farm by large quantities of water cast upon it as a result of the construction of appellant's railroad. The declaration contains two counts; the first alleging that the defendant broke and entered the plaintiff's lands and flooded the same with water; and the second alleging that by reason of the erection of an embankment upon which the track of the railroad was laid, and the cutting of ditches on the sides of this embankment, a large body of water was collected and emptied into a ditch which led from the railroad to and through plaintiff's lands, greatly in excess of the quantity which came down before the construction of said railroad, and greatly in excess of the capacity of said ditch, whereby plaintiff's lands were rendered unfit for cultivation or for any beneficial use.

The defendant pleaded, first, that it did not commit the wrongs alleged; second, the defendant's license; and third, that what was complained of by plaintiff was merely a user of defendant's right of way to which it was entitled. The plaintiff joined issue on the first plea; to the second he replied he did not give the license alleged, and to the third plea he demurred. The demurrer was sustained, and issue was then joined on the replication to the second plea. The third plea was nothing more than a denial of the right to recover, and nothing more or less than the general issue plea, and was therefore bad. *Miller* v. *Miller*, 41 Md. 623; *Keedy* v. *Long*, 71 Md. 388. But the appellant claims that the declaration was defective, and that as the demurrer mounts to the first error, it should have been overruled; 1st, because there was a misjoinder of counts, and 2nd, because the second count is bad in substance. It has been decided, however, in *Gladfelter* v. *Walker*, 40 Md. 1, that a count for entering and breaking the plaintiff's close, was properly joined with counts for polluting a stream of water to the use of which, in its natural state, he was entitled. There is, therefore, no misjoinder of counts. Nor do we discover any defect in the second count. The only defect suggested is the omission to charge that the acts complained of were *wrongfully* done; but the form of

this count is in substantial accord with the form set forth in the Code, Art. 75, sec. 23, sub-section 32, for diversion of a a stream, where the word *wrongfully*, is not used, and Mr. Poe, in his work on *Pleading*, sec. 581, refers to the form above mentioned as a proper form, saying, that any plain statement of the plaintiff's right and of its wrongful invasion will be sufficient. The wrongful character of the act here complained of sufficiently appears from the averment that it brought down upon the plaintiff's lands an increased flow and volume of water in excess of any former servitude imposed on said lands. But even if this second count were bad, the demurrer would not reach the declaration, since one good count would remain.

During the trial, ten exceptions were taken ; the seventh and tenth being to rulings upon the prayers, and all the others being to rulings upon questions of evidence, of which the ninth was abandoned at the argument in this Court.

Before considering these exceptions, it will be well to state briefly the physical features of the locality, and the theory upon which the case seems to have been presented below. The suit was brought in Worcester County and was removed for trial to Wicomico County, after a warrant of re-survey had been issued on the application of the plaintiff, and had been returned to the Court from which it issued. There was no defense taken on warrant, and there was no question of title involved depending upon conflicting pretensions or disputed lines ; but the case seems to have been regarded by the Court, as if these matters were involved and the admission of evidence to have been restricted accordingly. The certificate and plat shows that the N. Y. P. & N. R. R., at the point nearest to the plaintiff's lands, runs south from Pocomoke City, and passes through a large swamp, known as Dun Swamp, crossing in its passage through the swamp an old ditch which had been cut by the landholders of the neighborhood to drain the lands to the west of said swamp ; which ditch is known as the main lead ditch, and runs in a meandering southwest course from a point some distance to the

east of the railroad, for about a mile and a half, when it crosses a county road, known as the Wagram Road, where it enters the plaintiff's lands.   From that point it continues on a southwest course through the plaintiff's lands, after leaving which, it runs in a southerly course for a mile or more, until it pours into Lamden's Mill Pond, the overflow of which runs still further south into Pitt's Creek, a tributary of Pocomoke River.   In constructing the railroad through this swamp it became necessary to erect a heavy embankment in order to secure a solid foundation for its tracks.   In order to drain the railroad's right of way, and to keep this embankment firm and solid, it was necessary to cut ditches on both sides of this embankment, and in order to prevent backing up the water upon the lands east of the embankment, it was necessary to put in a culvert under the embankment, at the point where the railroad crossed the main lead ditch, that being the lowest point on the railroad in that vicinity.   The flow of these lateral ditches above the culvert was south, and the flow of those below was north, thus concentrating the flow of both directions at the culvert, and the plaintiff's claim is that this brought down into the main lead ditch, a much larger body of water than had ever before come down, and greatly in excess of the capacity of the main lead ditch, causing great damage and injury to his land.

The first exception was taken to the ruling of the Court in permitting the surveyor who executed the warrant, while explaining the plat, to testify to the altitude of certain points on the plat above mean tide level, by reference to certain letters and figures said to have been placed by the United States Geological Survey upon certain trees, posts and bridges located on the plat.   Upon being questioned by the Court as to his knowledge of the purpose and meaning of these marks he admitted that he did not see the marks put there, and that he had no actual, immediate knowledge of their significance, but said "the same kind of marks were put up all through that section by the survey;" that he had seen them engaged in their work, and knew the marks indicated the altitude.   The

defendant objected, but the Court overruled the objection and permitted the witness to testify as to the meaning of these marks, and to the altitude of the places where the marks were found.

These objects, so marked, are not ancient monuments, and cannot be proved as such. The fact that they were surveyors marks could be proved by one who saw them made, but when this witness undertook to state their meaning and significance, his testimony was pure and simple hearsay, falling within none of the exceptions to the exclusion of that character of evidence. Its admission was therefore error. The surveyor, having explained the plat, was asked by defendant's counsel if he had located all the ditches to the east and west of the railroad and Dun Swamp, leading to the main ditch, and he admitted that there were such ditches in Brittingham's field, east of the railroad, and others west of it, leading into the main ditch, but not located on the plat; whereupon plaintiff's counsel objected to any evidence of ditches not located on the plot, and the Court excluded the evidence. This constitutes the second exception. If in this action, defense had been taken on warrant, the question of title, or of boundaries, being in dispute, evidence of objects not located on the plot would not be admissible. In such cases, as was said in *Medley* v. *Williams*, 7 G. & J. 69, " the plots are part of the pleadings, *made to elucidate conflicting locations.* * * * * They require as much precision and certainty as other pleadings, and no title paper" (or object) "not located, can be offered in evidence, upon the well-established principle of correspondence between the allegation and the proof." But this is not such a case. In *Addison* v. *Hack*, 2 Gill, 221, which was an action for diversion of a stream, the plaintiff was about to obtain a warrant of survey for the purpose of locating its pretensions, and the defendant agreed that the plaintiff should at the trial introduce evidence for the purpose of locating his title papers, and the boundaries thereof, the same as if he had sued out a warrant in due form of law, but at the trial the defendant objected to the admission of a certain patent and

deeds offered by plaintiff to sustain his title. They were admitted, however, and on appeal, this ruling was affirmed, the Court saying, "In an action relating to lands, if the defendant does not see fit to take defense on warrant, the plaintiff is under no obligation to ask for a warrant to locate his land or any other matter in controversy between the parties. Without such plots, he may read his title papers in evidence, prove his possession under them, and show by oral or other testimony, the injury he complains of." It follows that if the plaintiff could do this, so also the defendant could introduce like testimony to defeat his claim, and the issuing of a warrant of survey, where none was required, could not change the rule of evidence. But since the case of *Addison* v. *Hack, supra,* was decided, the Act of 1852 was enacted by which it was provided "that in no action shall plats be considered as pleadings or evidence *per se ;*" (Code Art. 75, sec. 82), and that no warrant of re-survey shall issue in any action "unless there shall be a dispute about the location of the lands for the injury of which damages are claimed, or unless the Court shall be satisfied that plats are necessary for *illustration."* Here there is no pretense of dispute as to location of plaintiff's lands, and it must be considered that the plat was authorized for illustration only. In *County Commissioners v. Wise,* 71 Md. 43, which was an action for damages caused by the unskillful erection of a bridge, a sketch of the scene was admitted in evidence, the Court saying, "It is not perceived how any error was committed in submitting to the jury a correct representation of what they would have seen if they had gone on the premises as authorized by the Act of 1886, ch. 415." It was most material here to the protection of the defendant, that it should be permitted to show the existence of other ditches, not located on the plat but leading into the main ditch below the railroad, but above plaintiff's lands in order that the jury might determine how much those ditches contributed to the flood which plaintiff ascribed solely to the defendant, and we think it was error to confine the testimony to the ditches located on the plat.

In the third exception the plaintiff was asked, over the defendant's objection, whether any complete relief, in his opinion, could be afforded to his lands from these overflows, unless the main ditch between the railroad and his lands were put in order, to which he answered, no. We cannot perceive the relevancy of this testimony. The only apparent result of cleaning out this portion of the ditch would be to bring down the water upon the plaintiff's lands in greater volume and with swifter flow, and if this were done, and complete relief were obtained, it would afford no evidence of the amount of damage already sustained and recoverable in this suit. We think, therefore, the question was improperly admitted.

The fourth exception arose thus. Mr. Schoolfield had testified that in 1899, he had cleaned out the main ditch through the plaintiff's land and had deepened it for a considerable distance below plaintiff's land ; also that he had cut numerous ditches on this land, all leading into the main ditch, all of which was indicated on the plat ; and that the work cost $663.20. Plaintiff was asked whether he knew this work and said he did, and was then further asked if the charge was reasonable. To this question defendant objected, but the Court allowed the question and the witness replied it was satisfactory to him. This constitutes the fourth exception, which will be considered in connection with the fifth. In that exception the plaintiff was asked if he could state the total cost of the work done in the effort to relieve his land, to which defendant objected, but the Court overruled the objection, and the witness answered, "I think I spent $1,200 to $1,500."

We cannot discover how the amount paid by plaintiff for this work, or the reasonableness of Mr. Schoolfield's charge, tends to show what damages plaintiff had sustained by any act or omission of the defendant. The plat shows that the new ditches cut by Schoolfield on plaintiff's "low ground" were many times greater in length than that part of the main ditch within his lines and constitute an elaborate system of new drains. How much of this was necessary to relieve the increased flow due to the construction of the railroad, and how

much was done to relieve the previous flow, which the testimony shows was copious and often disastrous, it is impossible to tell. The limit of the liability of the railroad is the actual damage inflicted by it up to the time of trial, and it cannot by any process be made liable in this suit for the cost of an elaborate system of drainage designed to anticipate and prevent future damage. We think, therefore, these rulings were both erroneous.

The sixth exception was to plaintiff's testimony " that by reason of his inability to grow crops, or loss in crops he could not make, as well as in loss by crops destroyed, his damage was from $2,000 to $3,000, by reason of the overflow." Such evidence is too uncertain and speculative to furnish a safe guide to the jury in estimating damages and ought not to have been admitted. *Abbott* v. *Gatch*, 13 Md. 315 ; *Crabb* v. *Koontz*, 69 Md. 59.

In the eighth exception, Mr. White, a witness for defendant, and a civil engineer, having been examined in chief, was under cross-examination, when, as appears in the record, defendant's counsel, "by permission, asks a few questions in examination in chief." Having produced a plat of the locality which he testified he had made, the witness was asked to show the jury upon that plat the course of the railroad and the ditch, to which plaintiff's counsel objected, both on the ground that the plot was inadmissible in itself, and because it was too late then to produce it. What we have said in reference to the second exception is sufficient to indicate that we think the plat would have been admissible if offered in chief ; but we think that the right to further examination in chief, if not subject to the pleasure of plaintiff's counsel, was subject certainly to the discretion of the Court and is, therefore, not the subject of review here.

The seventh exception was taken to the rejection of a prayer offered by the defendant at the close of plaintiff's testimony to withdraw the case from the jury. But instead of resting its own case upon this ruling, defendant proceeded to offer evidence in defense, and it has been held in *Barabasz* v. *Kabat*,

91 Md. 53, that in such case the ruling is not open for review, and that if there was error in the ruling it was waived by defendant.

The plaintiff offered seven prayers, of which the 1st, 2nd, 6th and 7th were granted and the 3rd, 4th and 5th were rejected. The defendant offered nine prayers, of which the 2nd was granted and all the others were rejected, and the tenth exception of the defendant was to these rulings.

The plaintiff's first and second prayers are based upon the theory that the defendant had no right, in the effort to drain its right of way, to collect the surface waters therefrom, and from lands lying above their right of way, and to discharge them in greater volume than before, upon lands below their right of way, and that defendant was responsible to him for injury resulting from such increased flow.

The defendant's first, fourth and fifth prayers are based upon the theory that if the erection of the embankment and the digging of the lateral ditches on its right of way, was necessary and proper for the drainage of the right of way and to make the railroad tracks safe for public travel and traffic, and if the ditches were cut and graded in a proper and skillful manner, and that the water collected therein and brought therefrom, flowed into the main ditch where it had previously flowed, and that the same was an ancient outlet constructed by land owners of that neighborhood upon the natural course of drainage, and for the purpose of carrying off the water that had come from above said railroad before its construction, then the defendant was not liable for damages caused to the plaintiff's land, by reason of any increased volume of water thus cast upon it.

We do not think there can be any difficulty in determining which of these conflicting theories must prevail. The principles involved were fully considered in an opinion by JUDGE ALVEY in *Balt. & P. R. R. Co.* v. *Reaney*, 42 Md. 117, where the appellants, having authority to construct a tunnel under the bed of certain streets of the city, contended that any damage the appellee had suffered to his house by reason of

the excavation of one of these streets, was *damnum absque injuria*, and that no right of recovery existed, unless it should be shown that the power delegated to the appellants had been illegally or negligently exercised.  But the Court said, "That the excavation of the street for the tunnel was lawful, and done in a lawful manner at the time, can constitute no defense to the action, if damaged, actually resulted from the work. There are many cases in which an act may be perfectly lawful in itself, and will continue to be so, until damage has been done to the property or person of another ; but from the moment such damage arises, the act becomes unlawful, and an action is maintainable for the injury."  In *O'Brien* v. *Balt. Belt R. R.*, 74 Md. 374, the Reany case was approved, and it was said that "while the right in the State to grant the power to a railroad company to occupy the street is unquestionable, *  *  the adjoining lot owners are not without redress for any substantial injury sustained to their property rights that may be produced by the construction or operation of the railroad in the street;" and in *Lake Roland Co.* v. *Webster*, 81 Md. 535, it was held that the right to build the elevated railway did not imply exemption from responsibility for injuries inflicted by its operation and construction, and the principles laid down in the Reany case were declared to have been ever since regarded as settled in this State.

The defendant was able to produce in support of his position, the opinion of so eminent a Judge as JUDGE REDFIELD, who held in *Hatch* v. *Vermont Central R. R.*, 25 Vt. 50, that railroad companies are not liable for necessary consequential damages accruing to premises not taken by them, for the prudent construction and operation of their roads.  But that case was considered in the Reany case, being urged upon the Court without avail by the late Judge Fisher, so justly distinguished for his learning and force.  It should be observed also that Judge Redfield, while holding, as we have stated, held, that upon general principles, not at all in conflict with that opinion, railroad companies are liable to an action where a land owner is injured by having water turned upon him in

such manner as materially to injure him.    It was suggested
at the argument that all consequential damages are presumed
to be included in the amount agreed on, or awarded at the
time the construction of the road is entered upon, and this is
true, as applied to one whose land is taken by the railroad, but
as applicable to this case, it is only necessary to say that by
no process can compensation awarded to A, be applied to an
injury inflicted upon B.    We have no hesitation, therefore, in
holding that the first and second prayers of the plaintiff were
properly granted, and that the defendant's first, fourth and fifth
prayers were properly rejected.

It is obvious that any privilege granted by any land owner
*above* the plaintiff, to enlarge and use that portion of the main
ditch through his own lands, could have no effect as against
the plaintiff, and there was therefore, no error in granting the
plaintiff's sixth prayer.

The plaintiff's seventh prayer allows the jury in estimating
the plaintiff's damages to take into consideration the loss re-
sulting from his inability to cultivate his land, and the reas-
onable expenses incurred by him in the effort to remedy the
injury, and it follows from what we have said in disposing of
the fourth and fifth exceptions that this prayer was improp-
erly granted.

The defendant's third prayer submits to the jury a question
of law, namely what constitutes a recognition by the plaintiff of
defendant's right to drain into the main ditch, since it assumes,
without requiring the jury to find, the request from which
such recognition is claimed to follow.    But apart from this
objection, the prayer is defective because the facts if all duly
found, could create no bar to recovery for recurring injuries
resulting from subsequent failure of defendant to clean and
open the main ditch.

Defendant's sixth prayer should have been granted.    Plain-
tiff's right of recovery is founded upon defendant's act of com-
mission in casting upon plaintiff's land an increased flow of
water, and not upon its subsequent omission to clean out the
ditch through plaintiff's land, or to do any other specific act

regarded by the plaintiff as necessary or appropriate to remedy the situation.

We think defendant's seventh prayer would have asserted a correct proposition of law if it had been limited to the *acts* of the defendant, without reference to their *negligent character per se ;* but that reference was calculated to mislead the jury, and we think there was no error in its rejection, especially as the law governing the burden of proof was correctly laid down in defendant's 2nd prayer which was granted.

The defendant's eighth and ninth prayers sought to withdraw the case from the jury on the same theory upon which its first, fourth and fifth prayers were framed, and they were, therefore, properly rejected.

It follows that the judgment appealed from must be reversed.

> *Judgment reversed with costs to appellant above and below and new trial awarded.*

(Decided November 21st, 1901.)