WHITEHALL CONSTRUCTION COMPANY, Inc., a Delaware Corporation

v.

WASHINGTON SUBURBAN SANITARY COMMISSION, a Maryland Corporation,

and

Emanuel Ferriera and Alejo Lopez, Jr., t/a M & L Construction Company, a partnership.

Civ. A. No. 8715.

United States District Court
D. Maryland.

Sept. 2, 1958.

Edwin J. Wolf, Baltimore, Md., Leonard S. Melrod, Joseph V. Gartlan, Jr., Friedlander & Melrod, Washington, D. C., for plaintiff.

Paul M. Higinbothom and Paul R. Kach, Baltimore, Md., for defendants Emanuel Ferriera and Alejo Lopez, Jr.

Frederick J. Green, Jr. and G. Dudley Iverson, Baltimore, Md., for defendant Washington Suburban Sanitary Commission.

732

R. DORSEY WATKINS, District Judge.

The Whitehall Construction Company, Inc. (Whitehall), engaged in the construction of houses and necessary road improvements including street paving at or about Whitehall Street and Tenbrook Drive in the Ballantrae Subdivision, Montgomery County, Maryland, has brought suit, as alleged owner and one in "full possession" of said streets and paving, to recover from the Washington Suburban Sanitary Commission (Commission) and from Emanuel Ferriera and Alejo Lopez, Jr., trading as M & L Construction Company (M & L), a partnership. The action is for damages, arising in the course of the installation and construction of a sanitary sewer by the defendants and due, allegedly, to the artificial diversion by the defendants of surface waters in the area of the unimproved portion of Whitehall Street to the north of said subdivision and in the immediately surrounding area, and to the directing and concentrating, by the defendants, of the surface waters in the northern end of, and under, the paved portion of Whitehall Street, thus causing and resulting in a complete collapse of the paved area from the subdivision line to the intersection of Tenbrook Drive. The second amended complaint filed in this case contains two counts, the first asserting a cause of action sounding in negligence and the second in trespass. The defendants have moved the court to dismiss count two of the second amended complaint [1] for failure to state a claim therein upon which relief can be granted, on the grounds that the acts alleged constitute neither a nuisance nor a trespass in that there is no allegation (1) that the defendants owned or had dominion or control over the unimproved portion of Whitehall Street to the north of the Ballantrae Subdivision; or (2) that there was more than one occasion on which surface waters were caused to flow into the northern end of Whitehall Street; or (3) that the defendants intentionally diverted the natural flow of water; or (4) that the defendants negligently caused the diversion of the natural flow of surface waters.

The defendants' first contention is entirely without merit. The court knows of no case, nor has counsel called the court's attention to any case, holding that an essential element of a cause of action for trespass or nuisance is ownership by the alleged tortfeasor of, or control over, land contiguous to the land invaded by the tortfeasor.[2] While such

1. This case has previously been before the court on a number of motions, the most recent hearing having been on the motions of the defendants to dismiss count II of the first amended complaint, which motions were granted for failure of the plaintiff to make the necessary allegations as to its possessory interest in the land in question. Plaintiff was granted leave to amend and permission was given in open court that defendants' motions to dismiss count II of the first amended complaint be deemed refiled as to the second amended complaint when filed.

2. See: Baker v. Howard County Hunt, 1936, 171 Md. 159, 188 A. 223, 107 A.L.R. 1312, trespass by pack of fox hounds; United States v. Causby, 1946, 328 U.S. 256, 264, 66 S.Ct. 1062, 1067, 90 L.Ed. 1206, " * * * The flight of airplanes, which skim the surface but do not touch it, is as much an appropriation of the use of the land as a more conventional entry upon it."; Article 1 A, section 8 of the Code of Public General Laws of Maryland, 1957 Edition, where trespass by aircraft and privileged flight are defined as follows:

"Lawfulness of flight. Flight in aircraft over the lands and waters of this State is lawful, unless at such a low altitude as to interfere with the then existing use to which the land or water, or the space over the land or water is put by the owner, or unless so conducted as to be imminently dangerous to persons or property lawfully on the land or water beneath. The landing of an aircraft on the lands or waters of another, without his consent, is unlawful, except in the case of a forced landing. For damages caused by a forced landing, however, the owner or lessee of the aircraft or the airman shall be liable, as provided in § 9."

Cf. Frisch v. Mayor and City Council of Baltimore, 1929, 156 Md. 310, 312,

ownership or control may often factually exist, and this is especially true where the tortious interference with an interest in land is occasioned by acts done on the adjacent land which result in an entry or invasion by an inanimate or intangible object rather than a living being, in either case it is the interference by the defendant with the plaintiff's interest in the plaintiff's exclusive possession of the invaded land or in the plaintiff's use and enjoyment of such land that constitutes the actionable wrong.

■ Turning then to the three remaining contentions of the defendants, it becomes apparent that their basic premise is that any alleged wrong committed by the defendants is in the nature of a private nuisance and thus to subject them to liability, it must be proved, and alleged, that:

"(d) The invasion is either

"(i) intentional and unreasonable; or

"(ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless or ultrahazardous conduct." (A.L. I. Restatement of Torts, section 822).

In addition, the defendants have consistently throughout insisted that, in the absence of negligence, as an indispensable element for damages such as plaintiff alleges[3] there must be the continuance or recurrence of the invasion over a period of time.

" * * * Dicta by the courts and statements by commentators that the interference must continue or recur over some period of time in order to constitute private nuisance are not infrequent. Such statements are generally true as statements of fact in particular cases. Substantial harm is necessary to liability for private nuisance, and continuance or recurrence of the interference is often necessary to cause such harm. Likewise, where the harm was not foreseeable in the first instance, some continuity or recurrence may be necessary to liability. In many cases some degree of continuity or some recurrence may also be necessary for the purpose of injunctive relief. But the decisions do not support such statements as embodying an established rule of law. An interference with the use and enjoyment of land involving substantial harm caused by liability forming conduct subjects the actor to liability, however brief in duration the interference may be * * *." A.L.I. Restatement of Torts, Scope & Introductory Note to Chapter 40, Invasions of Interests in the Private Use of Land (Private Nuisance), pp. 222–223.

Thus as recurrence relates to substantial harm and substantial harm to unreason-

144 A. 478, an action in negligence wherein the Maryland Court of Appeals held, inter alia, a declaration demurrable for failure to allege who owned and controlled certain water pipes which burst with resulting damage to the plaintiffs' goods in leased premises, such an allegation being necessary to establish the existence of the respective duties on the part of the various defendants in regard to the pipes. See also: Toy v. Atlantic Gulf & Pacific Co., 1939, 176 Md. 197, 200, 208, 210, 213, 4 A.2d 757, an action in negligence in which a verdict was directed in favor of the defendant contractor and in which, in affirming the trial court's refusal to apply the doctrine of res ipsa loquitur or the doctrine of

strict liability as laid down in Rylands v. Fletcher, 1866, L.R. 1 Ex. 265, 279, affirmed 1868, L.R. 3 H.L. 330, the Maryland Court of Appeals noted the adjacent premises were neither owned by nor under the exclusive control of the defendant contractor, such ownership or control being relevant to the applicability of the aforesaid doctrines.

3. Again this argument emphasizes the fact that, although count two is titled "damages for trespass" and purports to allege a trespass, the defendants persist in characterizing the allegations of count two as an attempt to assert liability on the part of the defendants for a private nuisance.

ableness (A.L.I. Restatement of Torts, sections 826–831) and as, moreover, recurrence after the first instance bears upon foreseeability thereafter, and foreseeability in turn may indicate negligence or intent, in considering the general rule regarding elements of liability for private nuisance or trespass, it does not become necessary to deal with continuance or recurrence as an element distinct, or apart from, those announced in section 822 (nuisance) or section 166 (unintentional, non-negligent entry on land) of the Restatement.

■ The defendants rely heavily on the case of Battisto v. Perkins to support their position that the second count of the second amended complaint must be dismissed for failure to allege either (1) negligence or (2) an intentional invasion.

* * * "Historically, the action for nuisance is older than the action for negligence. The use of the term 'nuisance' has been criticized on the ground that it confuses the invasion of the property right of use and enjoyment with the conduct that is the true basis of liability. See Prosser, Torts (2d ed.), § 72, and Restatement, Torts, Introductory Note to section 882. In section 833, comment (a) it is noted that 'Where the invasion is not intentional, the liability of the person harmfully interfering with the flow of surface waters depends upon whether his conduct has been negligent, reckless or ultrahazardous, * * *. Where, however, the invasion is intentional, liability depends upon whether the invasion is unreasonable * * *.'" (Battisto v. Perkins, 1956, 210 Md. 542, 546, 124 A.2d 288, 290).

It should be noted that the Battisto case was defining the type of conduct giving rise to liability for nuisance, not for trespass. There can be no question but that where a complaint alleges an invasion of an interest in land, under the appropriate factual circumstances, recovery may be sought in an action for negligence, nuisance, or trespass. Cf. Mullan v. Belbin, 1917, 130 Md. 313, 327–328, 100 A. 384.

■■ Today the basic distinction between trespass and private nuisance is the interest interfered with; in the case of the former it being the exclusive possession of land and, in the latter, the use and enjoyment of land (Prosser on Torts, 2d Ed., section 72, p. 409; A.L.I. Restatement of Torts, Scope and Introductory Note to Chapter 40, pp. 224–225).

* * * "Trespass and private nuisance are alike in that each is a field of tort liability rather than a single type of tortious conduct. In each liability may arise from either an intentional or an unintentional invasion. For an intentional trespass, there is liability without harm; for private nuisance, there is no liability without substantial harm. In trespass an intentional invasion of the plaintiff's possession is of itself a tort, and liability follows unless the defendant shows a privilege; in private nuisance an intentional interference with the plaintiff's use or enjoyment is not of itself a tort, and unreasonableness [4] of the interference is necessary for liability.

"An invasion of possession of land normally involves some interference with its use and enjoyment, and liability for trespass has traditionally included liability for such incidental harms. In such case a plaintiff can recover in an action of trespass all the damages that could be recovered in an action for private nuisance. * * *" (A.L.I. Restatement of Torts, Scope and Introductory Note to Chapter 40, p. 225).

---

4. As to the standards for determining unreasonableness see: Dittman v. Repp, 1879, 50 Md. 516; Meadowbrook Swimming Club, Inc., v. Albert, 1938, 173 Md. 641, 197 A. 146.

Conversely, in the instant case, even if (as the defendants insist) the invasion were to be deemed to be a nuisance, this would not preclude its also being a trespass.

The relevant portions of the second count of the second amended complaint are as follows:

* * * "That at all times here pertinent plaintiff was the owner of said streets in full possession thereof, and was the owner of the paving laid therein at its cost and expense. At said time and place, the defendants did install a certain sanitary sewer in a portion of said street and in the extension of said street northeasterly beyond the Ballantrae Subdivision.

"That in the course of the installation and construction of the said sanitary sewer the defendants, and each of them, caused the flow of surface water in the area of the unimproved portion of Whitehall Street to the north of said subdivision and the area surrounding the same to be diverted artificially from its natural course and said flow of surface water was thereby artificially directed to and concentrated in the northern end of the paved portion of Whitehall Street and under said area, thereby undermining the surface of said area and causing a complete collapse of the paved area from the subdivision line to the intersection of Tenbrook Drive and making it necessary to completely repave said area all to the great loss and damage of the plaintiff."

That this is an allegation of an interference by the defendants with plaintiff's interest in the exclusive possession and physical condition of the land invaded can scarcely be denied. A case closely in point is that of Guest v. Commissioners of Church Hill, 1900, 90 Md. 689, 45 A. 882 in which a municipal corporation by a change in the grade of streets and construction of drains diverted the natural course of surface waters, thus concentrating, and directing

them, in volume on adjacent land. The declaration contained four counts; the first and fourth alleging negligence, the third the creation of a nuisance, and the second as follows:

* * * "2. And for that the defendant, for a long time heretofore has used the lot of the plaintiff in Church Hill, against the protest of the plaintiff, as a common drain or sewer for the town, and by draining its streets in a manner different from the way in which the same formerly naturally drained a much larger force of water now falls upon the said lot of the plaintiff than formerly fell thereon, and the plaintiff has laid out and expended large sums of money in repairing and erecting foundations, walls, and piers to avoid and to repair damage constantly caused by this act of the defendant; and the defendant, by the exercise of care and diligence, could have prevented this damage which the plaintiff has in the past sustained and now sustains by reason of the improper subjection of the plaintiff's land to the uses and purposes of the defendant." (90 Md. 692, 45 A. 883).

In considering the import of these allegations the court said:

* * * "The gravamen of the second [count] is that by the change of grade in the streets the natural drainage of the surface water of the town was so diverted as to throw much larger quantities thereof on the appellant's lot than formerly fell thereon." (90 Md. 691, 45 A. 883).

* * * * * *

"The liability of the corporation in such cases *does not arise from negligence* in doing the work upon the streets or gutters. The injury is regarded as the *direct result of the corporate act* which is in the nature of *a trespass* by the corporation *upon the occupation* and enjoyment of the premises by their own-

er. * * *" (90 Md. 694, 45 A. 883). (Emphasis supplied.)

In order to avoid the adverse impact of such statements upon the position taken by the defendants, they urge upon the court one factual distinction between the instant case and the Guest case; that in the latter case the invasion continued over a period of time. In short, they reiterate their contention that in the present case, in the absence of negligence, continuance or recurrence is an essential element of the tortious conduct, and must be alleged, whether remedy therefor is sought, as here, by an action of trespass or, as in other suits, by an action on the case for nuisance. As previously pointed out in this opinion, in an action for trespass while recurrence may bear upon the existence of foreseeability and thus relate to, or be evidence of, an *intentional* invasion or a *negligent* invasion, it is not a separate, distinct element of liability.

If then the invasion herein involved is one of an interest in the exclusive possession and physical condition of land, as alleged in the complaint, and since negligence is not the gravamen of the cause of action (Guest v. Commissioners of Church Hill, supra, 90 Md. 689, 45 A. 882; Cahill v. Mayor and City Council of Baltimore, 1901, 93 Md. 233, 237–239, 48 A. 705) at least under the language of the Maryland Court of Appeals, liability adheres to such conduct regardless of intent (Scott v. Bay, 1853, 3 Md. 431, 443; Atlantic & George's Creek Consolidated Coal Co. v. Maryland Coal Co., 1884, 62 Md. 135, 143–144). "The right to maintain the action of trespass *quare clausum fregit* exists in this State, whether the trespass was committed wilfully and wantonly or unwittingly." Gore v. Jarrett, 1949, 192 Md. 513, 516, 64 A.2d 550, 551. That, moreover, neither negligence nor intent need be alleged is indicated by reference to the following forms of pleading authorized by statute in section 14 of Article 75 of the Code of Public General Laws of Maryland, 1957 Edition, subsections 28 and 32:

"(28) That the defendant broke and entered certain land of the plaintiff, called 'The Orchard,' in ............ county, and depastured the same with cattle."

"(32) That the plaintiff was possessed of a mill, called 'Linganore mill,' in ............ county, and as such possessor was entitled to the flow of a stream for working the same, and the defendant, by cutting the bank of said stream, diverted the water thereof away from the said mill."

While as to the form or mode of pleading this court, of course, is not bound by state law, this being a matter of procedure governed by rule 8(a) of the Federal Rules of Civil Procedure, 28 U.S.C. A., whether or not the allegations made herein by the plaintiff constitute the statement of claim upon which relief may be granted is a substantive matter and requires the application of the substantive law of Maryland. Thus to the extent that the above quoted forms may be considered indicative of such substantive law they are binding on this court. In this connection the case of New York, Philadelphia & Norfolk Railroad Co. v. Jones, 1901, 94 Md. 24, 50 A. 423, is pertinent wherein the Maryland Court of Appeals said:

" * * * The declaration contains two counts,—the first alleging that the defendant broke and entered the plaintiff's lands, and flooded the same with water; and the second alleging that by reason of the erection of an embankment upon which the track of the railroad was laid, and the cutting of ditches on the sides of this embankment, a large body of water was collected and emptied into a ditch which led from the railroad to and through plaintiff's lands, greatly in excess of the quantity which came down before the construction of said railroad, and greatly in excess of the capacity of said ditch, whereby

plaintiff's lands were rendered unfit for cultivation or for any beneficial use." (94 Md. at page 29, 50 A. at page 423).

The allegations of the first count in the Jones case were not attacked by the defendant but those of the second count were, the defendant demurring to that count on the ground that it was bad *in substance*. To this the court said, impliedly construing the predecessor section to subsection 28 and expressly construing the predecessor section to subsection 32:

" * * * Nor do we discover any defect in the second count. The only defect suggested is the omission to charge that the acts complained of were wrongfully done, but the form of this count is in substantial accord with the form set forth in the Code, (article 75, § 23, subsec. 32) for diversion of a stream, where the word 'wrongfully' is not used; and Mr. Poe, in his work on Pleading, (section 581), refers to the form above mentioned as a proper form, saying that any plain statement of the plaintiff's right and of its wrongful invasion will be sufficient. The wrongful character of the act here complained of sufficiently appears from the averment that it brought down upon the plaintiff's lands an increased flow and volume of water in excess of any former servitude imposed on said lands. But, even if this second

count were bad, the demurrer would not reach the declaration, since one good count would remain." (94 Md. at pages 29–30, 50 A. at page 424).

Clearly the allegations of the second count of the second amended complaint meet the substantive requirements for stating a cause of action as those requirements are set out in the statutory forms and in the Jones case.

Some authorities indicate that the modern trend is, or should be, that, except where ultrahazardous activities are undertaken, an unintentional, non-negligent entry does not subject the actor to liability (A.L.I. Restatement of Torts, section 166; Prosser on Torts, 2d Ed., section 13, pp. 54–55). Such a holding, although directly contrary to the language of the Maryland Court of Appeals, would not be at variance with many of that court's decisions were the factual situations giving rise to liability carefully analyzed.

 Those courts applying the doctrine of strict liability have used as the criterion for establishing the existence of the requisite tortious conduct merely the voluntary doing of an act,[5] said act resulting in an unauthorized entry on the land of another, while modern authorities, on the other hand, have found no liability where, in the absence of negligence or the engaging in extra-hazardous activities, the entry is occasioned by an unavoidable accident notwithstanding a voluntary [6] act on the part of the de-

5. There was no such voluntary act as where the defendant was carried onto the plaintiff's land by others against his will. (Smith v. Stone, 1647, Style 65, 82 Eng.Rep. 533).

6. Voluntary is here used in the sense that, although the consequence of the act was unintended, unforeseeable, and unavoidable, the act itself was intended in that it was not a forced, unconscious, or somnambulistic act. In Brown v. Kendall, 1850, 6 Cush. 292, 60 Mass. 292 where defendant, interfering in a dog fight, raised a stick and accidentally hit plaintiff in the eye the court in characterizing the act as unintentional made this distinction clear when it said:

" * * * We use the term 'unintentional' rather than involuntary, because in some of the cases, it is stated, that the act of holding and using a weapon or instrument, the movement of which is the immediate cause of hurt to another, is a voluntary act, although its particular effect in hitting and hurting another is not within the purpose or intention of the party doing the act."

See also the famous Nitro-Glycerine case (Parrot v. Wells, Fargo & Co.), 1872, 15 Wall. 524, 82 U.S. 524, 21 L. Ed. 206, where, in an action for trespass to land for damage to plaintiff's premises resulting from an explosion

738

fendant. (A.L.I. Restatement of Torts, section 166, Comment and Illustrations, pp. 395–396; Prosser on Torts, 2d Ed., section 13, pp. 54–55).

"An unavoidable accident is an occurrence which was not intended, and which, under all the circumstances, could not have been foreseen or prevented by the exercise of reasonable precautions. No accident, of course, is entirely inevitable, so long as it results from a voluntary act * * *." (Prosser on Torts, 2d Ed., section 29, p. 117).

That the defendants seek to come within the doctrine of "unavoidable accident" is apparent both from their answers to the first amended complaint and their brief. They allege in their answers that the injuries, losses, and damages complained of by the plaintiff resulted from an Act of God—a most extraordinarily heavy rainfall—and in their brief they cite illustration three of section 166, A. L.I. Restatement of Torts:

"3. A piles logs on his land by the side of a stream well above highwater mark. An unprecedented freshet carries away the logs and deposits them on B's land downstream, causing harm to the land. A is not liable to B."

This they paraphrase to read:

"A, without negligence or recklessness, does a lawful act on his own land (in our case, a *necessary* public act). An Act of God brings damage therefrom to a neighbor. The latter has no claim."

Assuming, arguendo, that Act of God and unavoidable accident are available defenses, (Cf. Vizzini v. Dopkin, 1939, 176 Md. 639, 6 A.2d 637) they must be pleaded and proved as such; and as their existence is not disclosed by plaintiff's complaint, they cannot be invoked to dismiss the complaint for failure to state a claim upon which relief can be granted.

█ Whether the position taken by the Restatement of Torts reflects the law

occasioned by the attempt of the defendant's employees to open a box con-

of Maryland need not be decided at this point. The matter now in question is the sufficiency of pleadings. Even assuming that contrary to the language of the Maryland Court of Appeals strict liability is not imposed for trespass to land and that "unavoidable accident", as defined by the modern authorities, excuses an unauthorized entry, this court holds that the plaintiff has stated a cause of action for trespass when an interference with the plaintiff's interest in the exclusive possession and physical condition of the land invaded has been alleged.

In short, it is possible to conceive of a set of facts, admissible under the language of count II, that would permit a recovery. Accordingly, the motions of the defendants to dismiss the second count of the second amended complaint are denied and it is hereby ordered that all pleadings heretofore filed on behalf of the defendants be deemed refiled as to the plaintiff's second amended complaint.

taining nitro-glycerine with a hammer, the court found no liability.