MEADOWBROOK SWIMMING CLUB, INC., *v.*
TALBOT J. ALBERT ET. AL.
[No. 9, January Term, 1938.]

*Decided February 3rd, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Walter C. Mylander,* with whom were *Nathan Patz* and *Walter C. Mylander, Jr.,* on the brief, for the appellant.

*Robert W. Williams,* with whom were *J. A. Dushane Penniman* and *Ritchie, Janney, Ober & Williams* on the brief, for the appellees.

URNER, J., delivered the opinion of the Court.

The appeal in this case is from a decree for an injunction against the continuance of a noise nuisance, the existence of which was asserted, and disputed, in the pleadings and in the testimony.

In regard both to the facts of the case and to the law governing its decision, we are in accord with the conclusions stated in the opinion delivered by Chief Judge Dennis, in the lower court, from which we quote as follows:

"Several years ago the defendant, a business corporation, built an amusement place, including a large swimming pool, with accessory bath houses and other appropriate structures on a lot in the floor of the narrow valley of Jones' Falls. The property lies in the extreme northern section of the city, just south of the new Kelly Avenue bridge. * * *

"High hills rise to both sides of the valley of Jones' Falls. To the west, on the less precipitous hills, is built the old settlement known as Mt. Washington. To the east the hills are more precipitous, clifflike, and those knolls and hills, which lie to the northeast, have within the past few years become increasingly popular as sites for expensive residences, with more or less spacious grounds. * * *

"In 1935 the defendant enlarged its amusement place by adding an outdoor dance floor, with a 'shell' platform

for the musicians' stand. In the early summer of 1935 the defendant opened the dance floor to the public, and engaged modern jazz orchestras to play dance music from nine to twelve, six nights per week, and used amplifiers to enhance the volume of sound.

"Immediately a number of residents and property owners, located on the hills or plateau some 200 feet or more above the dance floor level lying to the northeast, were annoyed, and complained in writing to the defendant. Sundry efforts were made to minimize the alleged nuisance. The mechanical amplifiers were virtually abandoned; the dancing cut down to four nights a week; expert advice was sought; various experiments undertaken. Nevertheless, in spite of the competition of other noises, largely unavoidable and inevitable, mostly created by public service corporations and individuals (for example the noise created by passing railroad trains, trolley cars, automobile horns, the hum of traffic on Falls Road), the blare of the brasses, the beating of the drums, etc., operated by the musicians in defendant's orchestra was, and is, so penetrating and loud that it cannot be seriously questioned that witnesses, who are doubtless normally constituted, and of exceptional integrity and intelligence, who live on the sides of the hills and the plateau, are unable to sleep, to study, or otherwise lead normal lives in their own homes for four evenings a week during the past and present summer. * * *

"Curiously enough, by some law of acoustics, which the court does not profess to understand, the sound of the orchestras has always been much less obtrusive on the same level and on the westerly hill, so that persons living quite near on the Falls Road, likewise persons living to the south and in Mt. Washington, suffer no undue inconvenience. Incredible as those facts may seem they were, in the court's opinion, definitely established; to wit, that the effect of the sound becomes intensified as the sound waves ascend the hills to the northeast. * * *

"Though not a nuisance *per se*, any business so conducted as to become such may be enjoined. *Bonaparte*

*v. Denmead,* 108 Md. 174, 69 A. 697. Neither is the element of legality nor public use and high quality conclusive.

"The law is clear that where a trade or business as carried on interferes with the reasonable and comfortable enjoyment by another of his property, a wrong is done to a neighboring owner for which an action lies at law or equity. In such cases it makes no difference that the business was lawful and one useful to the public and conducted in the most approved method. *Susquehanna Fertilizer Co. v. Malone,* 73 Md. 268, 20 A. 900; *Scott v. Bay,* 3 Md. 431; *Lurssen v. Lloyd,* 76 Md. 360, 25 A. 294; *Northern Cent. Ry Co. v. Oldenburg & Kelley,* 122 Md. 236, 89 A. 601. *Jackson v. Electro Products Co.,* 132 Md. 128, 103 A. 453.

"The rule which must control is whether the nuisance complained of will or does produce such a condition of things as in the judgment of reasonable men is naturally productive of actual physical discomfort to persons of ordinary sensibilities, tastes, and habits, such as in view of the circumstances of the case is unreasonable and in derogation of the rights of the party (*Hamilton Corp. v. Julian,* 130 Md. 597, 101 A. 558; *Woodyear v. Schaefer,* 57 Md. 1, 12) subject to the qualification that it is not every inconvenience that will call forth the restraining power of a court. The injury must be of such a character as to diminish materially the value of the property as a dwelling and seriously interfere with the ordinary comfort and enjoyment of it. *Adams v. Michael,* 38 Md. 123; *Gallagher v. Flury,* 99 Md. 181, 182, 57 A. 672; *Euler v. Sullivan,* 75 Md. 616, 618, 23 A. 845.

"Many cases (too many in fact to enumerate) are found in the reports of nuisances which were enjoined due to pollution of water courses, and of the air; of continuing damages to property and health. For example, where noxious gases injuriously affecting the health, comfort, and convenience of persons of normal sensibilities, so as to deprive persons living nearby of the reasonable enjoyment of their dwellings, the nuisance was en-

joined, though in a manufacturing and industrial community. *Washington Cleaners & Dyers v. Albrecht,* 157 Md. 389, 146 A. 233; *Susquehanna Fertilizer Co. v. Spangler,* 86 Md. 562, 39 A. 270; *Taylor v. Baltimore,* 130 Md. 133, 99 A. 900; *Chappell v. Funk,* 57 Md. 465.

"Again, nuisances due to the installation of tanks for the storage of inflammable and explosive oils (*Hendrickson v. Standard Oil Co.,* 126 Md. 577, 95 A. 153), escaping smoke, (*Northern Cent. Ry. Co. v. Oldenburg & Kelley,* 122 Md. 236, 89 A. 601), the establishment of a pesthouse whereby persons are exposed to disease (*City of Baltimore v. Fairfield Imp. Co.,* 87 Md. 352, 39 A. 1081), were enjoined.

"Of greater interest are precedents relating to nuisances due to the creation of noises. From those we find that noise alone, if it be of such a character as to be productive of actual physical discomfort and annoyance to persons of ordinary sensibilities, may create a nuisance, and be the subject of injunction, though such noise may result from the carrying on of a trade or business in a town or city. *Dittman v. Repp,* 50 Md. 516, 517. Noises created by blasting give rise to relief at law, or in equity by injunction. *Green v. Shoemaker & Co.,* 111 Md. 69, 73 A. 688; *Longley v. McGeoch,* 115 Md. 182, 80 A. 843. Noises arising from much less alarming and dangerous origins than blasting may also prove such a nuisance as to justify the remedy of injunction. In a relatively recent case, a defendant, who kept on his premises so great a number of domestic animals, fowl, hogs, and dogs, that their noise deprived the complainant neighbor of the reasonable use and comfortable enjoyment of his adjacent dwelling, was properly enjoined. *Singer v. James,* 130 Md. 382, 100 A. 642.

"Nor is it any answer or defense that the railroad, the street railway, the tooting of automobile horns, may have added to the noises of the locality. No matter how many other separate and independent offenders there may be the defendant must answer for its individual con-

tribution. *Woodyear v. Schaefer,* 57 Md. 1; *Euler v. Sullivan,* 75 Md. 616, 618, 23 A. 845.

"It can scarcely be argued that any habitual noise (whether produced by skilled musicians led by the frank and cultivated leaders who testified as here, or by domestic animals, as in *Singer v. James,* 130 Md. 382, 100 A. 642) which is so loud, continuous, insistent, not inherent to the character of the neighborhood, and unusual therein, that normal men, women, and children, when occupying their own homes, however distant, are so seriously incommoded that they cannot sleep, study, read, converse, or concentrate until it stops, is not an unreasonable, unlawful, invasion of their rights. The injunction prayed must therefore issue."

The chancellor's conclusion not only is supported by Maryland cases cited in his opinion, but also is in accord with decisions of courts in other states in cases involving nuisances created by noises incident to recreational activities. *Gilbough v. West Side Amusement Co.,* 64 N. J. Eq. 27, 53 A. 289; *Peragallo v. Luner,* 99 N. J. Eq. 726, 133 A. 543; *Edmunds v. Duff,* 280 Pa. 355, 124 A. 489, 33 A. L. R. 719; *Phelps v. Winch,* 309 Ill. 158, 159, 140 N. E. 847; *Bartlett v. Moats,* 120 Fla. 61, 162 So. 477; *People v. Rubenfeld,* 254 N. Y. 245, 172 N. E. 485.

The decree in this case permanently enjoined the defendant corporation from "the playing of loud music, or the creation of other similar noises" upon its property, "in such manner that the noise made by the same is transmitted onto the properties of the plaintiffs, or any of them, so as to deprive the plaintiffs and the members of their families from the reasonable use and comfortaable enjoyment" of their respective homes.

The argument for the appellant assumed that the decree has the effect of an unqualified prohibition against the playing of jazz or other loud music at the defendant's dance resort. But such a purpose is not indicated by the terms of the decree. It only forbids the use of the defendants' property in such manner that the loud music or noises produced thereon are transmitted to the prop-

erties of the plaintiffs in such volume as to create the nuisance which they alleged and proved. The case was not tried upon the theory that the emanation of sounds from the defendants' resort could not be reduced sufficiently to avoid interference with the reasonable enjoyment of the plaintiffs' homes, and that the only remedy would be to exclude altogether from the dance programs the class of music which the defendant has been customarily providing for its patrons. It is inferable from the evidence that a change of the conditions under which the loud jazz music is played for the dancers might prevent the disturbance against which the plaintiffs are entitled to protest. In good weather the dancing is on an open air platform located between an inclosed pavilion and the "shell" in which the orchestra is installed. The open side of the shell faces the north, and the sounds projected from it may thus be concentrated in volume as they are transmitted towards the residences of the plaintiffs on the hills to the northeast. On rainy nights the dancing is conducted in the inclosed pavilion, and the orchestra plays in an inclosure, with the result that the plaintiffs, on such occasions, are relieved of any discomfort or inconvenience from that source. It was suggested by the defendant's president, at the trial, that the construction of a roof to cover the open air dance floor and to connect with the top of the shell, would obviate the cause of complaint asserted in this suit. The decree leaves the defendant free to adopt any effective method of so reducing the volume of sound transmitted from its property to the homes of the plaintiffs that they will no longer be disturbed in the enjoyment of the rights which the decree is designed to protect.

It is complained that the injunction should not have been granted when the defendant was proposing to erect a roof over the dance floor as a means of adequately limiting the transmission of the sounds there produced. But after having failed for two years to abate the disturbance which provoked the suit, and which had been the subject of persistent complaints, the defendant could

not validly assert a right to have the restraining decree longer deferred. The form of the decree is not objectionable as insufficiently definite, for it specifies the purpose and extent of the restriction which it imposes, while leaving the defendant at liberty to devise and apply promptly an efficient plan for the abatement of the prohibited nuisance. In the case of *Singer v. James*, 130 Md. 382, 100 A. 642, a similar form of decree was approved.

*Decree affirmed, with costs.*