FOX et al. *v.* EWERS et al.

[No. 189, October Term, 1949.]

652

*Decided July 18, 1950.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Michael Paul Smith* and *W. Albert Menchine* for the appellants.

C. *Walter Cole*, with whom were *Ernest C. Trimble* and *Allen E. Buzzell* on the brief, for the appellees.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from a decree enjoining defendant from storing asphalt or parking or storing trucks, tractors and trailers on his property, adjoining plaintiffs' dwelling, or from operating trucks, tractors and trailers thereon, such use of defendant's property having been found to cause odors, fumes and noises to penetrate plaintiffs' dwelling, causing serious disturbance to the peaceful enjoyment of their property and their personal welfare, and to constitute a nuisance. The case was tried in open court. Nineteen witnesses testified. Judge Gontrum delivered an oral opinion and later signed the decree from which this appeal is taken. In his opinion he indicated an intention to restrict the activities which the decree later prohibited. On further consideration of the nature of the relief he concluded that defendant's "lot is so small that it would be impossible for the trucks and trailers in question to be parked on the lot without constituting a nuisance to the complainants, and the decree has been worded accordingly."

Judge Gontrum is evidently familiar with the neighborhood in question. Most of the witnesses are neighborhood witnesses. Without disrespect to the judge, it may be said that the case is a neighborhood case, tried before a neighborhood judge. A judge is not, as a juror once was, a witness. Nevertheless the Supreme Court, on appeals from state courts on constitutional questions, has long shown special deference to the decisions of the state courts because of their familiarity with local conditions. *Laurel Hill Cemetery v. City and County of San Francisco*, 216 U. S. 358, 30 S. Ct. 301, 54 L. Ed. 515.

In *Five Oaks Corporation v. Gathmann*, 190 Md. 348, 357, 58 A. 2d 656, 661, a nuisance case, we said, "There is another feature in the case which is quite compelling from our standpoint. This case was heard at length. Many witnesses testified. Their testimony was con-

flicting. The Chancellor heard them and saw them. He came to the conclusion that the appellees had proved their case. We can find in the record testimony to that effect. Under such circumstances, with nothing but the cold printed type before us, we should not say that the Chancellor was wrong in his conclusion, unless it very clearly appears that a mistake, either of law or of fact, was made. A mistake of fact does not mean that on reading the testimony we might come to a different conclusion from that reached by the Chancellor who saw and heard the witnesses. It means that the evidence clearly does not support the conclusion of fact reached by the Chancellor." In the instant case we think this feature is at least as compelling as it was in the case quoted.

Recent cases in this court (*Meadowbrook Swimming Club v. Albert*, 173 Md. 641, 197 A. 146; *Five Oaks Corporation v. Gathmann, supra; Green v. Garrett*, 192 Md. 522, 63 A. 2d 326) leave little room for dispute as to the controlling legal principles on the question of nuisance *vel non*, which were established many years ago and have been reaffirmed and applied in the recent cases. At the oral argument and in the briefs there was practically no dispute as to legal principles. Differences as to application of these principles are mainly differences, between more and less, which reflect opposing views of the evidence. In the circumstances, we shall adopt Judge Gontrum's opinion and add brief comment on defendant's contentions to the contrary. Judge Gontrum's opinion is as follows: "The complainants are the owners of a house and lot on Horn Road about 170 feet east of the Belair Road at Perry Hall in Baltimore County. They acquired the property in 1931 and erected a dwelling thereon and have resided there ever since.

"The defendants are the owners of an improved lot on the Belair Road lying between the complainants' property and the Belair Road. The defendants' property was owned by Mr. David Degruchy, grandfather of the defendant, George D. Fox, up until the time of his death in 1939. I might say in passing that everyone of that

section of Baltimore County knew Mr. Degruchy, a fine, sturdy, upright character, a real old-fashioned blacksmith who had the respect and confidence of everybody in that community, a man of high intelligence. This property is improved by an old brick building formerly used as a blacksmith shop by Mr. Degruchy and used also, during his life time, for the storage of certain road repairing machinery and a few asphalt distributing tanks and trucks.

"The present business of Mr. Fox is quite a development on the business of his grandfather. It is true old Mr. Degruchy did have some small asphalt business but apparently that was incidental to his blacksmith and wheelwright shop. The cheerful and melodious sound of a blacksmith's hammer on an anvil is far different from that of the explosions and roaring of huge tractor trailer trucks. Mr. Fox has developed a large contracting enterprise and apparently has outgrown his limited quarters on the Belair Road.

"Young Mr. Fox has been successful and has laudably and energetically and ambitiously developed the little business which he established when he purchased this property. He acquired the property in 1939 when his father bought it in for him at auction and conveyed it to his son several years later. Mr. Fox immediately moved in some machinery and road building equipment. In 1944 he possessed two asphalt distributors and acquired other machinery from time to time as his business increased, so that in 1947 the number of distributors had increased to seven.

"The defendant has been parking the trucks, trailers and distributing tanks in the rear of his lot immediately adjoining the property of the complainants. Mr. and Mrs. Ewers state that the starting of the large engines in the tractors make loud, roaring noises when the trucks are started in the morning and that the tractors emit noxious and injurious smoke, fumes and odors; that the trailers contain and it is undisputed, an asphalt or similar mixture which has a pungent, nauseating odor. They

state that the asphalt leaks from the trailers resulting in deposits of the asphalt on the ground adjoining their property. There is no denial that there is some leakage from these distributors on to the ground and Mr. Fox states that he has undertaken to cover up the spots where the asphalt has dripped with small stone.

"The complainants state that the conditions existing upon the defendants' property as a result of the smell, odor and noises, and the gnats which they claim have been attracted to the asphalt distributors and the asphalt on the ground seriously affects the peace and quiet and enjoyment of their home; that the noises and the fumes are injurious to their health, and that the value of their property has been depreciated as a result thereof.

"These conditions, the plaintiffs say, are particularly bad in the hot summer months. At that time, they claim that great quantities of gnats are attracted by the operation of the defendants which penetrate the screens of their home and cause them serious inconvenience and annoyance. I might say now, insofar as the gnats are concerned, I am uncertain as to what brings the gnats to that particular locality. It is perfectly possible they breed in the nearby ditch and then are attracted by the heat of the machinery which is stored at the rear end of the lot adjoining the property of Mr. and Mrs. Ewers.

"Mr. Fox frankly admits that his operations have grown but he denies his operations at Perry Hall constitute a nuisance.

"The general principles as to what constitute nuisances in general have been well established in a long series of Maryland cases, and it is unnecessary to review them at length here. 'Nothing is better settled in this State than that the granting or refusing of an injunction rests in the sound discretion of a Court of Equity.'

"In the early case of *Adams v. Michael,* 38 Md. 123, [17 Am. Rep. 516], the court held that 'The power to interfere by injunction to restrain a party from so using his own property as to destroy or materially prejudice the rights of his neighbor, and thus to enforce the maxim

658

"*sic utere tuo ut alienum non laedas,*" is not only a well established jurisdiction of the Court of Chancery, but is one of great utility, and which is constantly exercised.'

"In *Dittman v. Repp*, 50 Md. 516 [33 Am. Rep. 325], the Court said: 'The criterion for determining whether a court of equity will interfere and restrain by injunction an existing or threatened nuisance to a party's dwelling is, whether the nuisance complained of will or does produce such a condition of things as, in the judgment of reasonable men, is naturally productive of actual physical discomfort to persons of ordinary sensibilities, and of ordinary tastes and habits, and as, in view of the circumstances of the case, is unreasonable and in derogation of the rights of the complainant.' * * *

" 'In determining the question of nuisance from smoke or noxious vapor, or from noise or vibration, reference must always be had to the locality, the nature of the trade, the character of the machinery, and the manner of using the property producing the annoyance and injury complained of.' * * * 'Noise alone, if it be of such a character as to be productive of actual physical discomfort and annoyance to a person of ordinary sensibility, may create a nuisance, and be the subject of an action at law, or an injunction from a court of equity, though such noise may result from the carrying on of a trade or business in a town or city.'

"In the case of *Meadowbrook Swimming Club, Inc., v. Albert*, 173 Md. 641 [197 A. 146, 148] which was quoted with approval by the Court of Appeals in the case of *Five Oaks Corporation v. Gathmann* the Court held: 'Of greater interest are precedents relating to nuisances due to the creation of noises. From those we find that noise alone, if it be of such a character as to be productive of actual physical discomfort and annoyance to persons of ordinary sensibilities, may create a nuisance, and be the subject of injunction, though such noise may result from the carrying on of a trade or business in a town or city.'

"The defendant has brought out that there is considerable traffic on the Belair Road, and that the rumbling

of trucks and the sounding of horns on that road are plainly audible in the complainants' home. In the opinion of the Court, this does not alter the situation insofar as the plaintiffs and the defendants in this case are concerned. The Court of Appeals has held repeatedly that it is not any answer or defense that a railroad or street railway or the tooting of horns may have added to the noises of the locality. No matter how many other separate and independent offenders there may be, the defendant must answer for his individual contribution to the noise. There is no doubt there is a good deal of noise on the Belair Road, a heavily traveled main thoroughfare. Even though it is conceded, and it must be, that there is a great deal of noise on the Belair Road, nevertheless, the defendant cannot be excused from his individual contribution to the noise in that particular community, which is, in all probability, of a more definite and more annoying character, being close to the home of the complainants, than the more distant rumble and sounds of the highway. The Court is of the opinion that it is possible for the defendant, Mr. Fox, to correct the conditions complained of, and which the Court finds exists, provided he uses additional precautions to avoid becoming a nuisance to his neighbors. The backing up of the trucks to the complainants' property, starting them at an early hour in the morning with the resultant noises and confusion, naturally contributes greatly to the distress experienced by the complainants.

"Insofar as the odors are concerned, it is argued very earnestly by Mr. Smith that the unpleasant odors might come from an open ditch containing sewage. No doubt, the smell from the ditch is unpleasant, but the same principle, I believe, would hold true insofar as odors are concerned, as applies to sound, and the defendant must answer for his individual contribution which is the permeating, acrid odor of asphalt. Fresh asphalt does have a penetrating, disagreeable smell if one is in close proximity to it. The odor coming from the asphalt must be much more apparent when the trailers are in close

proximity to the complainants' residence than would be the case if they were parked farther away. It appears to the Court that the conditions result, to an extent, from the close proximity to the complainants' home. By moving the trucks to some other locality or possibly on another position on the lot the conditions complained of by the complainants may be corrected. It may be necessary, however, for Mr. Fox to park his distributors on some other lot. It would seem that the machinery, other than the trailers and the trucks, does not give annoyance to the complainants; that the operations carried on in the building itself do not constitute a nuisance.

"The Court is not prepared at this time to make a statement as to what changes should be made in the conduct of the business and probably an experimental decree would be in order, but it is apparent that the complainants are entitled to relief. It also seems to the Court that relief might be obtained without serious inconvenience or loss to the defendant in this case. Mr. Fox should do something to remedy the condition on his premises. Perhaps he can take corrective measures that will not unduly inconvenience him or put him to great expense and, at the same time, give the complainants relief from what, in my judgment, clearly constitutes a nuisance.

"(Note) The Court, since rendering the above oral opinion has given further consideration to the nature of the relief and is of the opinion that the Fox lot is so small that it would be impossible for the trucks and trailers in question to be parked on the lot without constituting a nuisance to the complainants, and the decree has been worded accordingly."

Defendants' contentions as to plaintiffs' specific complaints, e. g., noises and vibration, odors, gnats, are adequately dealt with in Judge Gontrum's opinion. There is conflicting testimony, but his findings are amply supported by evidence, and we accept them. It seems absurd to compare highway traffic noise on Belair Road, one hundred and fifty feet away—or much nearer street

noises, say on Charles Street or Franklin Street—with the noise of a battery of trucks, lined up fourteen feet from plaintiffs' dwelling, starting at 5 o'clock in the morning, crying "Sleep no more". Likewise if a ditch on defendant's property contains (as defendant says it does) human sewage, this is no excuse for defendant making food, sleep and breathing intolerable for plaintiffs through other and different odors. Gnats are (in more ways than one) plaintiffs' smallest ground of complaint—not an essential part of plaintiffs' case. Even if they breed in the ditch, they may, as Judge Gontrum says, be attracted by defendant's hot vehicles. Because, under prearranged scientific conditions, asphalt may be used to eliminate or exterminate gnats, we need not discredit positive testimony that they do swarm about defendant's asphalt trailers.

Defendant's principal complaint is that the decree in effect prohibits his business instead of restricting it. He says he began parking trucks or trailers in 1944 (earlier he says, but Judge Gontrum finds in 1944) and gradually increased the number without complaint by plaintiffs until 1947. He says he should not be prohibited from going back to the use he made of this property without complaint by plaintiffs. We do not think this proposal to turn back the clock is sound in principle or feasible in practice. The true test is not what plaintiffs endured without complaint, but what they were legally bound to endure. "It was natural for the complainant to bear evil as long as it was slight, rather than engage in a tedious and expensive litigation." *Woodyear v. Schaefer*, 57 Md. 1, 8, 40 Am. Rep. 419. Moreover it would be more difficult to find past facts than present facts. Apparently the principal change for the worse, from plaintiffs' standpoint, was in 1947, when defendant paved, with cinders, oil and chips, the rear part of his lot, adjoining plaintiffs' dwelling, which previously had been soft and sodded and could not be used for parking the trucks and trailers. Defendant himself and one of his employees make it clear that his business, and his

use of his property, has so grown that there is no room to park the trucks and trailers on any other part of the lot. Defendant says that on every visit Mrs. Ewers made to him he told her "that I was very sorry that the trucks annoyed her, that we would do everything possible not to disturb her but due to the fact that the lot wasn't too large, we had to use all of the space on the lot."

Except in Government injunction cases under the Sherman Act [15 U. S. C. A. §§ 1-7, 15 note], courts seldom dictate the details of the conduct of a business. Recently we have made or approved some sharp Solomonic divisions (necessarily more or less arbitrary) between what is forbidden and what is permitted (*Five Oaks Corporation v. Gathmann, supra; Green v. Garrett, supra*), but this is the exception rather than the rule. *Meadowbrook Swimming Club v. Albert, supra.* Courts do not needlessly prohibit an otherwise lawful business, but they do not hesitate to prohibit a business if it cannot be conducted without impairing the legal rights of neighbors. This is illustrated in a number of English cases cited in *Green v. Garrett, supra.* The business actually conducted by defendant at the time of the trial and the decree cannot be conducted without injury to plaintiffs. The business conducted before 1947 is only history. At and before the trial defendant showed no desire or willingness to turn the clock back. We see no reason for the court to do so now.

The prohibitions in the last paragraph of the decree must be read in connection with the findings in the preceding paragraph. If in essentially new conditions defendant should make some use of his property that might come within words of the decree, but would not injure plaintiffs, the decree would not be violated by such use and on application might be modified to permit such use. We see no occasion now to attempt to anticipate and define such possibilities.

*Decree affirmed, with costs.*