BATTISTO ET AL. *v.* PERKINS ET AL.

[No. 227, October Term, 1955.]

544

 

 

 

*Decided July 12, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, HENDERSON and HAMMOND, JJ.

*Stanley B. Frosh* for the appellants.

*Hal C. B. Clagett* and *James H. Pugh,* with whom were *Sasscer, Clagett & Powers* on the brief, for the appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from judgments for the defendants ordered by the trial court in directing a verdict for the defendant Perkins at the close of the plaintiffs' case, and for the other defendants at the close of the whole case. The action was brought by the owners of eight lots improved by dwellings in Queens Chapel Manor Subdivision, Prince George's County. The appellees are the owners of a tract of land containing some 28 acres located about 1400 feet from the appellants' lots and upon a higher level. Prior to the spring of 1952 the tract was unimproved and covered with trees and vegetation which retarded the normal flow of rain water. As a result of grading, bulldozing and building activities incident to the construction of a number of new residences, it was alleged that the natural flow of water was accelerated and large quantities of mud and debris were repeatedly precipitated upon the plaintiffs' properties, causing great damage.

The declaration was drawn upon the theory that the appellees committed an actionable wrong in the nature of a private nuisance. There was no allegation of negligence. There seems to be no question that an action at law will lie for a substantial injury of this character, under some circumstances at least. See *Harms v. Kuchta,* 141 Md. 610, 612. In *Laird, Rock & Small v. Campbell & Sons,* 200 Md. 627, the

action was based on negligence. Historically, the action for nuisance is older than the action for negligence. The use of the term "nuisance" has been criticized on the ground that it confuses the invasion of the property right of use and enjoyment with the conduct that is the true basis of liability. See *Prosser, Torts* (2d ed.), § 72, and *Restatement, Torts,* Introductory Note to section 822. In section 833, comment (a), it is noted that "Where the invasion is not intentional, the liability of the person harmfully interfering with the flow of surface waters depends upon whether his conduct has been negligent, reckless or ultrahazardous, * * *. Where, however, the invasion is intentional, liability depends upon whether the invasion is unreasonable * * *."

Most of the cases in Maryland involving the invasion of the right have been brought in equity, for injunction and damages. *Whitman v. Forney,* 181 Md. 652, 656; *Hancock v. Stull,* 206 Md. 117, 119; *Baltimore County Com'rs v. Hunter,* 207 Md. 171, 179. See also *Superior Construction Co. v. Elmo,* 204 Md. 1, 5. These cases recognize that an upper owner has the right to have surface waters flow naturally over the lands of lower owners, according to the civil law doctrine adopted in Maryland and a number of other states. *Whitman v. Forney, supra.* In that case the Court also adopted and applied the rule, known as "reasonableness of use", involving a balance of benefit and harm. Cf. *Enderson v. Kelehan,* 32 N. W. 2d 286 (Minn.), and *Spaulding v. Cameron,* 239 P. 2d 625 (Cal.). The Restatement seems to take the position that this rule is applicable in actions at law as well as in equity. The Maryland cases make it clear that the upper owner cannot, with impunity, artificially increase or concentrate the natural flow. *Biberman v. Funkhouser,* 190 Md. 424, 429. The rule applies to urban as well as rural lands. In the instant case it is true that the appellees had a right to improve their property and prepare it for the erection of houses, but it was entirely foreseeable that the removal of all ground cover might increase the run-off and cause damage to the lower owners, and we think the upper owners were under a duty to use reasonable precautions against harm. What would be reasonable is ordinarily a question for the jury. There was testi-

mony that the only precaution taken at the time grading was begun was the placing of several logs at the corner of the tract where Jamestown Road now exists as a paved street. This was the concentration point for draining the entire tract. Storm drains were not installed until some months later. There was testimony that there was no damage to the plaintiffs' properties until after the upper tract was denuded, and that the tract remained in that state for an unnecessarily long time before construction was begun.

The plaintiffs' witness O'Done testified that Mr. Perkins, who owned a large portion of the tract and was employed as the developer of the other portions, told the witness that "there was nothing he could do about it. It was an act of God." Notice of the damage was thus brought home to the developer, yet no effective steps were taken to correct the condition, which continued unabated with every rain. After storm drains were installed by the defendants, and by the Sanitary Commission, in the fall of 1952, the condition improved, although it was shown that an increase in the height of the curbing, by the City of Hyattsville, was a chief factor, and even so, there was a serious flood in 1955. At any rate, the plaintiffs claim no damage for any period subsequent to the fall of 1953, when the erection of houses was completed.

The appellees do not appear to contest the legal basis of liability, but assert that there was no proof that the mud and debris came from their land. They stress the fact that some of the plaintiffs' witnesses described the mud as red, whereas the soil of the defendants' tract was principally a sandy loam. They say that the waters flowing down Jamestown Road had flooded the appellants' properties repeatedly before the grading began, and that the mud came from other sources. They point to testimony that excavations were made in the bed of the street by the Gas Company and County authorities. They say that other properties were being developed in the neighborhood. Since the mud came from various sources, they contend there is no evidence "showing the extent of mud from that portion of the property for which Mr. Perkins would be responsible."

We find no merit in these contentions. There was testimony from a number of witnesses that they traced the source

of the mud and it came from the appellees' property. Water came down before, but not mud. At least one witness testified there was no other building operation going on at that time. It is, of course, the accepted rule that in passing upon the legal sufficiency of evidence, the testimony must be considered in a light most favorable to the plaintiffs. The fact that mud came from other sources as well would not relieve the appellees from liability. As was said in *Neubauer v. Overlea Realty Co.*, 142 Md. 87, 98: "It is no answer to a complaint of nuisance that a great many others are committing similar acts of nuisance upon the stream. Each and every one is liable to a separate action, and to be restrained." See also *Laird, Rock & Small v. Campbell & Sons, supra, West Arlington Co. v. Mount Hope*, 97 Md. 191, and *Woodyear v. Schaefer*, 57 Md. 1. Cf. *Armiger v. Balto. Transit Co.*, 173 Md. 416, 427.

We think there was legally sufficient evidence to take the case to the jury on the issue of whether the defendants took reasonable precautions against injury under all the circumstances. Since the case must be retried, we think it proper to discuss some of the other points raised by the appellants.

The court sustained objections to questions put to the plaintiffs' witness Throckmorton, who was a real estate and appraisal expert, and the witness Best, who was a builder and developer, as to how builders in the Washington area customarily meet a drainage problem. The only proffer was to "show what a builder would do if he had a drainage problem". The defendants produced testimony that they employed an engineer to make a drainage plan, which was ultimately installed. Naturally, each location presents different problems, and mere generalizations as to custom or usage would not seem to be relevant. The trial court also took the view that drainage was an engineering problem, and that the witnesses were not qualified to express opinions in that field. The question of qualification is largely in the discretion of the trial court. We find no error in these rulings.

The appellants also complain that they were restricted in their proof of damages. The court admitted evidence as to the percentage variation in the value of the plaintiffs' property, but excluded evidence as to the cost of restoring their

premises. We think this was error. The rule as to damages in a similar situation is fully discussed in *Superior Construction Co. v. Elmo, supra,* and the cases there cited. Cf. *Spaulding v. Cameron, supra.* See also *Prosser, Torts* (2d ed.), § 73. The cost of restoration is a proper measure of damage, unless the cost of restoration is greater than the diminution in value, and loss of use is an additional element of damage, in either event. We think the court also erred in directing a verdict against the plaintiffs, Mr. and Mrs. Lamar. These parties were not present at the trial, but there was testimony of Mrs. Dalrymple, the mother of Mrs. Lamar, who resided in the house during the period in question, and testified without objection as to the damage caused by the mud. There was also testimony as to the diminution in value of this property.

*Judgments reversed and case remanded for a new trial, with costs.*