## BISHOP PROCESSING COMPANY
### *v.* DAVIS ET AL.

[No. 223, October Term, 1956.]

*Decided June 4, 1957.*

The cause was argued before COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ., and McLAUGHLIN, J., Associate Judge of the Fourth Judicial Circuit, specially assigned.

*William H. Price* for the appellant.

*Marcus J. Williams* for the appellees.

PRESCOTT, J., delivered the opinion of the Court.

This is a suit by the plaintiffs (appellees) to perpetually enjoin the defendant (appellant) from maintaining and operating its processing plant near Bishop, Maryland, on the

basis that the same constitutes a nuisance, and that the odors emanating therefrom interfere with the rightful use and enjoyment by the plaintiffs of their properties in the area.

Many witnesses were offered by the appellant and the appellees, and much testimony was taken. It will be unnecessary to attempt to set forth all of this evidence in detail, but it amply supports a finding of the following facts:

The appellant, a Maryland corporation, (hereafter called "Company") owns and operates a processing plant in Worcester County, Maryland, located a short distance east of U. S. Highway No. 113, about a mile south of the Maryland-Delaware line. The surrounding country is generally rural in nature, with three villages each located about a mile from the plant. The appellees live and their properties are south and southwest of the plant at distances ranging from one-half to one mile. The plant commenced operation sometime during the year of 1955, probably in the month of February. Normal hours of operation are from 3 o'clock in the afternoon to 2 o'clock in the morning, but the hours are irregular, depending upon the volume of by-products to be processed. The cost of the plant was approximately $625,000.00, of which $30,835.15 has been spent for odor reducing equipment, supplies and chemicals. The plant processes about 35,000 tons of material during a normal year of which 60%, or approximately 21,000 tons, is transported to the plant from Swift and Company in Chambersburg, Pennsylvania, and the Campbell Soup Company in Camden, New Jersey. The material processed consists of chicken feathers, offal, viscera, blood, heads, feet, beef bones and any other poultry by-products. The operating process of the appellant is to cook the raw materials, extract the liquids, dry the resulting solids and grind them into a fine meal, which is high in protein and widely used in fertilizer and poultry feeds.

The witnesses produced on behalf of the plaintiffs described the odors emanating from the plant in various terms. A few of these descriptions are as follows: "You just can't live with it"; "choking"; "indescribable because they are awful"; "something dead"; "stifling and choking"; "rotten"; "I have myself been nauseated"; "odor of carrion"; "makes

me sick to my stomach"; "very unbearable"; "awful stench"; and, "bad as I have ever smelt, sickening."

There is little doubt that the process used by the Company in manufacturing its products, when not curbed, produces a shocking and nauseating stench and odor which permeates the surrounding atmosphere for more than a mile and that the stench is so bad that even though the doors and windows of the homes of persons living in the neighborhood surrounding the plant are closed, it comes into the homes causing throat irritations, severe headaches, loss of appetite, nausea, regurgitation and in other ways interferes with the comfortable enjoyment of their homes by the appellees in this proceeding. The appellees complained particularly of the terrific, indescribable and unwholesome effluvia that came from the plant and which varied only with the change of the direction of the wind, and stated that while there was relief when the wind blew the odor away from a particular location it was continuous during the operation of the plant in that it followed the wind and caused discomfort in another location in the direction from the plant in which the wind was blowing.

There are three methods of controlling or lessening the scent arising from the appellant's plant that were suggested by experts in that field. The first two, one by water and another by chemicals, both having proved ineffective, the Company put in an incinerator in an attempt to dispense with the odors. The incinerator was put in at the suggestion of Dr. McCabe, an engineering expert. All of the suggestions made by Dr. McCabe were fully complied with and the machinery suggested by him has been set up and is in operation. Dr. McCabe was of the opinion that if the system named by him is properly set up, it will control the odors produced by the processing of the materials, and the present operation is apparently satisfactory to the State Board of Health. However, the evidence disclosed that at least down to a very few days before the trial unwholesome and obnoxious odors were still emanating from the plant.

The Company is unquestionably making an honest effort to improve the unfortunate situation and to dispense with the odors completely; but down to the above-mentioned time, had

not been fully successful, although much had been done to alleviate the condition, and there is a reasonable probability that the Company will be able to comply with the trial Court's decree and continue its operation.

Upon this evidence and after hearing arguments by counsel, the chancellors entered a decree, which will be partly quoted in detail later, enjoining the appellant from using its property in a certain manner; and it is from this decree that the present appeal has been taken.

I

The appellant's first assignment of error is that the chancellors erred in admitting the testimony of certain witnesses "not relating to the plaintiffs' (appellees') complaints regarding their persons or properties". The testimony of these witnesses, some fourteen in number who mostly lived at various points surrounding the Company's plant and at distances usually greater than the properties of the appellees, consisted of what they personally experienced by way of smelling the acrid and pungent odors which arose from the processing plant; and how those odors affected them physically and in the enjoyment of their properties. The appellant contends that this evidence was inadmissible because it failed to "directly" relate to any of the appellees or their properties, and as a result, it seeks to "condemn and convict" the appellant on "general reputation". It will be unnecessary to pass upon each of the numerous objections individually as they, for all practical purposes, relate to the same subject matter and the reasons assigned for rendering the testimony inadmissible are, likewise, the same. We know of, and are cited, no rule of evidence that prohibits the admission of this testimony. On the contrary, when persons are complaining of offensive and obnoxious odors and their effect upon those persons and their properties, it seems peculiarly appropriate and impressively corroborative of the appellees' complaints to show that others, similarly situated, have experienced the same discomfort from the odors springing from the same source. It may be noted that while this Court was not required in that case to pass upon the question under consideration in *Meadowbrook Swimming Club v. Albert*, 173 Md.

641, 197 A. 146, there were only a few plaintiffs, yet, in excess of twenty persons testified for the plaintiffs with regard to the nuisance, and its effect upon the witnesses rather than upon the properties or persons of the plaintiffs. We find no error in the Chancellors' rulings on the admissibility of this testimony.

## II

### (a)

The appellant claims that there was no sufficient evidence to bring the complaints of the appellee down to the time of trial, in the face of the improvement brought about by the incinerator. As pointed out above, the Company unquestionably is making a serious attempt to control the offensive odors. However, the fact remains that the appellant conducted its business from about February of 1955 until November of 1956 without abating the condition complained of. Under these circumstances, the Company cannot validly assert a right to have the restraining decree deferred. *Meadowbrook Swimming Club v. Albert, supra,* at pgs. 648, 649.

### (b)

The appellant further contends that the evidence failed to establish such a case as to entitle the appellees to substantial damages if they had sued at law. It argues that if the conduct of its business constituted a public nuisance, private citizens could not restrain this public wrong, unless they allege and prove damages to themselves different in character from that sustained by the public generally, something the appellees had failed to do. As authority for this claim, the appellant cites the case of *Bauernschmidt v. Standard Oil Co.,* 153 Md. 647, 651, 139 A. 531. When suit is brought by a private citizen to restrain a public nuisance alone, this is a correct statement of the law. *Smith v. Shiebeck,* 180 Md. 412, 421, 24 A. 2d 795. However, a nuisance may be either private or public in character, and when it is both, it is termed mixed. 66 *C. J. S., Nuisances,* sec. 2.

The law of this State, insofar as it is applicable to the facts of this case, has been so frequently and recently enunciated in the opinions of this Court that it will be unnecessary to unduly elaborate upon it. It will be sufficient to quote from

one or two of the decisions and cite several others. In *Five Oaks Corp. v. Gathmann,* 190 Md. 348, 352, 353, 58 A. 2d 656, this Court, speaking through Chief Judge Marbury, said:

"'The law has been long settled that an individual may file a bill to restrain the continuance of a public nuisance if it injures or impairs the value of his property. * * *

"'This doctrine is not applicable to public nuisances alone. It applies also to any situation where the use of property by one person damages or injures another. (Citing *Scott v. Bay,* 3 Md. 431.) * * *

" 'There is no question or difficulty in regard to the principle invoked by the complainants in this case. The power to interfere by injunction to restrain a party from so using his own property as to destroy or materially prejudice the rights of his neighbor, and thus to enforce the maxim, *"sic utere tuo ut alienum non laedas,"* is not only a well established jurisdiction of the Court of Chancery, but is one of great utility, and which is constantly exercised. Indeed, without such jurisdiction, parties would, in many cases, suffer the greatest wrongs, for which actions at law would afford them no adequate redress. It is not every inconvenience, however, in the nature of a nuisance to a party's dwelling, especially in a large commercial and manufacturing city, that will call forth the restraining power of a Court of Chancery by injunction. To justify an injunction to restrain an existing or threatened nuisance to a dwelling-house. the injury must be shown to be of such a character as to diminish materially the value of the property as a dwelling, and seriously interfere with the ordinary comfort and enjoyment of it. Unless such a case is presented a Court of Chancery does not interfere. It must appear to be a case of real injury, and where a court of law would award substantial damages. * * * Where, however, such is shown to be the case, the power of the court is clear, and it will interpose by injunction.' "

And in *Meadowbrook Swimming Club v. Albert, supra,* we find the following:

> " 'The law is clear that where a trade or business as carried on interferes with the reasonable and comfortable enjoyment by another of his property, a wrong is done to a neighboring owner for which an action lies at law or equity. In such cases it makes no difference that the business was lawful and one useful to the public and conducted in the most approved method.' "

See also *Dittman v. Repp,* 50 Md. 516; *Woodyear v. Schaefer,* 57 Md. 1; *Fox v. Ewers,* 195 Md. 650, 75 A. 2d 357; 66 C. J. S., *Nuisances,* par. 79; *Gorman v. Sabo,* 210 Md. 155, 122 A. 2d 475.

We think that whether the conduct of the appellant's business be determined as constituting a public or a private nuisance, the appellees have shown sufficient discomfort to themselves and injury to their properties to entitle them to injunctive relief. We believe the evidence justifies a finding that the odors complained of caused physical discomfort and annoyance to those of ordinary tastes, sensibilities and habits; and that the injury to the appellees' properties was of such a character as to diminish materially their value as dwellings, and to interfere seriously with the ordinary comfort and enjoyment thereof. This clearly brings the appellees within the above quoted and cited decisions of this Court so as to be entitled to relief.

(c)

The appellant further submitted that there was no sufficient evidence to establish any reasonable belief that the condition complained of may reasonably be expected to exist in the future. What we said above with reference to the length of time that the appellant permitted the unpleasant situation to continue unabated answers this. We will add, however, that considerable latitude is permitted to the Courts in dealing with their decrees relative to injunctions. *Five Oaks Corp. v. Gathmann, supra,* 190 Md. at pgs. 359, 360; *State of*

*Georgia v. Tennessee Copper Co.,* 237 U. S. 474. If the appellant considers the injunction a stigma upon its business, it is possible that at some future date, upon a proper showing that the condition complained of has been abated for a reasonable period of time, the Court may see its way clear to dissolve the injunction.

### III

This brings us to the final assignment of error claimed by the appellant. It claims that the decree signed by the Chancellors was too general in its terms; that the decree should have specifically pointed out the things that the appellant was required to do and to refrain from doing. In other words, the appellant would have preferred the Court to direct it to do, and not to do, certain things; then, if it complied with the Court's commands, it would not be in contempt of the Court's order, whether the desired *result* was accomplished or not. While it is said in 3 *Md. L. Rev.* 246 that this Court has been "somewhat inconsistent" in its approach to this problem and Judge Markell stated in the *Fox* case, *supra,* that it had made or approved "some sharp Solomonic divisions" between what is permitted and what is forbidden, the preferable course to pursue in this kind of a case was pointed out by this Court in the *Gathmann* and *Fox* cases, both *supra.*

The decree herein permanently enjoined the appellant "from so using and employing the property occupied by the respondent situated near Bishop in the Fifth Election District of Worcester County, Maryland, as to result in the escape of noxious and offensive gases and odors which will affect the complainants in this case, or any of them, in the rightful use and enjoyment of their several properties owned and/or occupied by them as set forth in the Bill of Complaint."

It is pointed out in the *Gathmann* case, *supra,* 190 Md. 359, 360, that each case must be determined upon its own facts; that it is inadvisable to be too specific in the prohibition first decreed; that in a nuisance case such as the one before us general decrees should be passed with only such specific prohibitions as appear to provide the only remedies; and that the offending party should be permitted to adopt such measures as it sees fit to accomplish the desired result. The decree

in that case further pointed out that if the measures so taken are inadequate or insufficient, further application to the Court can be made and the decree made more specific if necessary. And in the *Fox* case, *supra*, 195 Md. at page 662, it was stated that the decrees in nuisance cases that specified in detail what the offending party can and cannot do are exceptions and not the rule. In the case of *Washington Cleaners v. Albrecht*, 157 Md. 389, 393, 146 A. 233, a decree very similar to the one in the present case was first entered and later made more specific. We conclude that the decree passed by the Chancellors was correct.

Under this last assignment of error, the appellant argues that the bill of complaint, insofar as the appellee Richard Banks is concerned, should have been dismissed. It contends that Richard Banks did not testify and there was no evidence offered that specifically related to his individual property. It is true that he did not testify, and no witness stated that he or she was actually upon the property of Mr. Banks at the time the witnesses noticed, and felt the effects of, the disagreeable odors. However, the location of his property is shown by the record, and witnesses testified that they had smelt the intolerably odious odors at practically all points of the compass surrounding the processing plant, at distances therefrom greater than Mr. Banks' property. There was ample evidence upon which to draw a rational conclusion that his property was affected in the same manner as other properties similarly situated.

Of course, there is no requirement that a plaintiff must personally testify in the support of his suit, provided he establishes his claims by other competent and relevant evidence. *Battisto v. Perkins*, 210 Md. 542, 549, 124 A. 2d 288. As a matter of fact, it was not until 1864 that parties to the record or parties interested in the outcome of a suit became competent to testify as witnesses. *Gorter, Law of Evidence*. 2nd Ed., 211. See also Art. 35, sec. 1, Maryland Code (1951).

Finding no error in the decree of the learned Chancellors, it will be affirmed.

*Decree affirmed, with costs.*