## SLAIRD *v.* KLEWERS ET AL.

[No. 124, September Term, 1970.]

*Decided December 8, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and SMITH, JJ.

*Richard S. Paulson,* with whom were *Paulson & Leach* and *Richard A. Buddeke* on the brief, for appellant.

*Allan Sosslau,* with whom were *Friedman & Lipshultz* on the brief, for appellees.

BARNES, J., delivered the opinion of the Court.

This appeal involves a controversy between two next-door neighbors owning and occupying homes at 2712 and 2714 Harmon Road, Oakland Terrace, Silver Spring, Montgomery County. The principal cause of the dispute is the building of a swimming pool by one of the neighbors.

The appellant, Sarah E. Slaird, and her husband, Walter J. Slaird (who died pending the litigation), owned the

4

property 2712 Harmon Road as tenants by the entireties, prior to filing the suit in equity involved in this case on November 27, 1967, in the Circuit Court for Montgomery County against the appellees, Reinhold J. Klewers and Patricia E. Klewers, his wife, who owned the property 2714 Harmon Road. The Slairds had occupied the 2712 Harmon Road property for approximately 21 years. During that occupancy, Mr. and Mrs. Slaird, at a substantial expenditure of both effort and money, beautified their property by seeding, planting shrubs, plants and flowers as well as by enclosing it with a fence.

In the bill of complaint the Slairds alleged that the Klewers, who had occupied the property 2714 Harmon Road for approximately one year, in May and June 1967, installed a swimming pool and patio with a diving board in the rear of the Klewers property, near the Slaird property. This allegedly changed the elevation and sloping of the Klewers property thereby injuring the Slairds, causing an unpleasant odor and depriving the Slairds of the use and enjoyment of their property which they had previously enjoyed. As a result of the splashing of chlorinated water from the use of the swimming pool, this treated water, it was alleged, came onto the Slaird property causing further damage. It was also alleged that the flood lights erected on the Klewers property in connection with the swimming pool as well as the loud noises generated by its use interfered with the Slairds' use of their own property, caused a nuisance and depreciated the value of the Slaird property. In the bill of complaint it was prayed that (1) the Klewers be enjoined, *pendente lite* and permanently, from continuing the condition alleged; (2) the Klewers, by mandatory injunction, be required to "relevel" their ground and yard so that water will not drain off onto the Slaird property and the use of the swimming pool as a nuisance be enjoined; (3) the Slairds be awarded damages for their injuries and loss of use in the amount of $10,000; and (4) the Slairds have other relief.

The Klewers answered the bill of complaint in due

course denying the change of grade so as to cause water to drain across the Slaird property, denying that the use of the swimming pool was a nuisance and alleging that the pool was installed properly in accordance with the provisions of the Montgomery County Code, that the Klewers had installed a dry well (although not necessary) to eliminate surface water that naturally flowed from their property to that of the Slairds, that they had used the pool in a careful and considerate manner limiting the hours of use in the evening and the number of persons using it in order to be "good neighbors," and that the Slairds were guilty of laches.

At the trial of the case before Judge H. Ralph Miller in the Circuit Court for Montgomery County, there was substantial testimony taken and a number of exhibits— mostly photographs — were introduced into evidence. There was, however, no expert testimony offered by Mrs. Slaird, the surviving plaintiff, and little offered on behalf of the Klewers.

In regard to the location of the two properties, the testimony established that Harmon Road runs east and west, the residences involved in this case being on the south side of Harmon Road and facing north. The Klewers property is on the west side of the Slaird property. West of the Klewers property is land owned by Montgomery County on which stands the Oakland Terrace School (the county property). Each of the Slaird and Klewers properties is approximately 60 feet wide on Harmon Road and 155 feet deep. The front building line of each property is approximately 38 feet from Harmon Road; their respective back yards are approximately 98 feet deep. Both houses are approximately 23 years old and were erected at about the same time. The Slairds were original purchasers of their property when the house was erected about 1947. The Klewers purchased their property in 1966; the previous owner was named Sokoloff.

From the front of the two houses on Harmon Road the land sloped slightly toward that road. When the residences were built twenty-three years ago, the land behind

them was woods. The surface water flowed across the Klewers property in a southeasterly direction to the rear of the Slaird property where it drained into the woods and down an old wagon trail. In 1957, the land on which the old wagon trail was located was developed and the Mancuso dwelling was erected. After this construction, the Slairds began to have drainage problems. To rectify this, a swale was constructed on the Mancuso property to drain away the excess surface water from the Slaird and Klewers properties. Several years later, the construction of a patio and sidewalk on the Mancuso property blocked the swale and this caused some surface water to accumulate on the Slaird property.

In May 1967, the Klewers signed a contract with John's, Inc.—a third party defendant in the suit in the lower court but not a party to this appeal—to construct a swimming pool on their property. John A. Trouth, Jr., who installed the swimming pool, testified that he tried his best to maintain the natural slope and flow of surface water on the property and, to meet the complaints by the Slairds, by constructing a new drainage swale in accordance with a recommendation of the Montgomery County building inspector. The new drainage swale was installed along the property line between the Slaird and Klewers properties and was lined with Orangeburg pipe, a perforated pipe which allows water to seep through the pipe along its entire distance. Mr. Trouth further testified:

> "With the barren piece of land I would say, from my experience in building pools and clearing land like this, that there should not have been as much water drained as had existed previously, particularly in a case where we completed the area to avoid any mud run-off or anything of that nature."

After the construction of the swimming pool, he never saw any evidence of any water build-up when he returned to the site.

Charles Butler, who at the time of the construction of the swimming pool was a building inspector for Montgomery County, testified that the pool and construction of drainage was inspected by him, was located and constructed in accordance with the county regulations, and that his recommendations for drainage were properly carried out by the contractors.

After the construction of the swimming pool had been completed, the Klewers constructed a dry well on the rear of their property to catch any excess water.

Mrs. Slaird testified in regard to the building of a patio on the Slaird property and the work done and expense incurred by her and her deceased husband in planting and developing a beautiful garden in the rear of their dwelling. She stated that after the installation of the swimming pool, water accumulated on the Slaird property as much as 30 or 40 feet from the rear property line; water ran into their front yard and into their basement; dirty back-wash water was sprayed on their property, trees and flowers, causing injury to them; flood lights were left on until late at night and the noise of swimming and swimmers continued until late at night. She had counted as many as 53 visitors using the swimming pool in one day. The Slairds, she testified, were prevented from using their patio; were forced to move their social affairs inside their residence, shutting their windows in an unsuccessful attempt to keep out the noise. The Slairds built a wall to block the water at a cost of $473.84 and planted a tree to screen the noise at a cost of $267.00. Water, however, she testified, continued to flow over the Slaird yard carrying dirt and pebbles which damaged their plants and sod; the garden deteriorated, some plants died; water stayed on their property for long periods of time; and, unpleasant odors developed.

With the construction of the swimming pool, relations between the Slairds and the Klewers deteriorated. There were many complaints by the Slairds in regard to noise, lights and water damage. The Klewers sought to satisfy these complaints by building the new drainage swale and

dry well already referred to and also erected a stockade fence to insure the privacy of the Slairds. The Klewers also began to turn off the flood lights at an early hour in the evening and to limit the number of persons using the swimming pool.

The Slairds, however, were not satisfied by these measures. Mrs. Slaird admitted on cross-examination that she spent a considerable time at her upstairs bedroom observing the activities in the pool area. She admitted that her testimony in regard to naked people in the pool really referred to people in bathing suits. She took down the license numbers of persons who visited the Klewers, took copious notes on activities at the pool and took over 1,000 pictures of the swimming pool, the Slaird property and the property of the Klewers generally. Mrs. Slaird had also complained several times to the Montgomery County officials and these complaints were the reason Mr. Butler had gone to the Klewers property subsequent to the construction of the swimming pool; but, as we have stated, he found nothing done or constructed contrary to the Montgomery County Code.

The testimony indicated that the Slairds from time to time had difficulty with nearly all their neighbors.

With the consent of counsel and accompanied by them, the trial judge made a personal inspection of the Slaird and Klewers properties after a hard rain and found that the drainage problem was not acute, and that the water backed up near the Mancuso property on the other side of the Slaird property. The trial court had found from the evidence at the end of the plaintiff's case that there was not sufficient evidence to justify injunctive relief for the alleged noise and lights. At the end of the testimony, the Chancellor denied all relief and dismissed the bill of complaint by his order of February 13, 1970, from which an appeal to this Court was timely taken.

The leading case in this Court—relied upon by the trial court as well as by both parties—is *Meadowbrook Swimming Club, Inc. v. Albert,* 173 Md. 641, 197 A. 146 (1938) in which the Chancellor's decree enjoining the loud noise

from a jazz band used at the commercial amusement business of the defendant was affirmed by our predecessors. The Court stated:

> " 'The rule which must control is whether the nuisance complained of will or does produce such a condition of things as in the judgment of reasonable men is naturally productive of actual physical discomfort to persons of ordinary sensibilities, tastes, and habits, such as in view of the circumstances of the case is unreasonable and in derogation of the rights of the party (*Hamilton Corp. v. Julian*, 130 Md. 597, 101 A. 558; *Woodyear v. Schaefer*, 57 Md. 1, 12) subject to the qualification that it is not every inconvenience that will call forth the restraining power of a court. The injury must be of such a character as to diminish materially the value of the property as a dwelling and seriously interfere with the ordinary comfort and enjoyment of it. *Adams v. Michael*, 38 Md. 123; *Gallagher v. Flury*, 99 Md. 181, 182, 57 A. 672; *Euler v. Sullivan*, 75 Md. 616, 618, 23 A. 845."
> (173 Md. at 645; 197 A. at 148.)

Whether or not an injunction will issue in a particular case to enjoin the nuisance complained of depends upon the facts in each case as this Court has consistently pointed out in the *Meadowbrook Swimming Club* case and in the subsequent cases following the decision in that case. See e.g., *Bailey v. Miller*, 233 Md. 138, 195 A. 2d 601 (1963); *Bishop Processing Co. v. Davis*, 213 Md. 465, 132 A. 2d 445 (1957); *Fox v. Ewers*, 195 Md. 650, 75 A. 2d 357 (1950).

Inasmuch as the trial court heard the case without a jury, Maryland Rule 886 permits this Court to review the case upon both the law and the evidence "but the judgment of the lower court will not be set aside on the evidence unless clearly erroneous and due regard will be

10

given to the opportunity of the lower court to judge the credibility of the witnesses."

In short, in order to reverse the Chancellor in this case we must find that his findings of facts were clearly erroneous or that he erred in applying the law to those facts. Our review of the record does not indicate that the Chancellor's findings of fact were clearly erroneous or that he misapplied the applicable law.

There was no sufficient evidence either expert or lay to establish a nuisance arising from noise in the use of the swimming pool. There was no expert testimony at all in this regard and the testimony of Mrs. Slaird was indefinite in regard to the duration and extent of the noise. There was no testimony that the noise would result in "actual physical discomfort to persons of ordinary sensibilities, tastes and habits." The same observations may be made in regard to the flood lights. Indeed, as we have stated, there was testimony that the Klewers had made reasonable efforts to reduce the use of the lights and the number of persons using the swimming pool, as well as to erect a six foot stockade fence to seek to meet the objections of the Slairds. Cf. *Battisto v. Perkins*, 210 Md. 542, 124 A. 2d 288 (1956). There was also testimony from which the Chancellor could well conclude that the Slairds were not persons of "ordinary sensibilities, tastes, and habits," but were supersensitive, difficult and troublesome.

In regard to the alleged change of grade and increased flow of surface and other water on the Slaird property, the testimony was conflicting but there was substantial testimony to support the Chancellor's conclusion that this condition, if it existed at all, was not caused by the construction of the swimming pool, which was done in accordance with the requirements of the Montgomery County Code and with full compliance with the recommendations of the building inspector. The Chancellor, himself, with the consent of counsel for both parties and accompanied by them, visited the site after a heavy rain,

as we have noted, and observed that the drainage problem "is not acute today."

In summary, we are of the opinion that the findings of fact by the Chancellor were not clearly erroneous and that he properly applied the applicable law to the facts so found. We shall affirm the order dismissing the bill of complaint.

> *Order of February 13, 1970, affirmed, the appellant to pay the costs.*